**UNITED STATES of America, Appellee,**

v.

**Billy J. MORGAN, Appellant.**

**No. 92–2091.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 16, 1993.

Decided July 2, 1993.

Rehearing Denied July 30, 1993.

---

John R. Cullom, Kansas City, MO, argued, for appellant.

D. Michael Green, Kansas City, MO, argued (Jean Paul Bradshaw II and D. Michael Green, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Billy J. Morgan appeals from his convictions for conspiring to distribute and manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and for manufacturing and aiding and abetting in the manufacture of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Morgan argues that the district court [1] erred in denying his motion to suppress evidence and in admitting the out-of-court statements of an alleged coconspirator. We affirm.

## I.

In the fall of 1989, Special Agent David Major of the Drug Enforcement Administration began investigating a methamphetamine laboratory near Merwin, Missouri. Based on his investigation, Major obtained a search warrant for the residence at Route 1, Box 76, Merwin, Missouri. A search team headed by Major, consisting of federal agents and Mis-

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

souri Highway Patrol troopers, executed the warrant on November 7, 1989. When the search team arrived at the residence, Carla Ford was the only person present. The officers discovered a large operational methamphetamine laboratory in the basement of the home. In the laboratory, they found methamphetamine, several recipes for producing methamphetamine, and all the chemicals and equipment necessary to produce methamphetamine. They also found a brown paper sack sealed with silver duct tape and containing shredded aluminum foil, a catalyst used in producing methamphetamine. Additionally, the officers discovered within the house a monitor connected to surveillance cameras positioned outside the house.

While conducting perimeter surveillance during the search, Trooper James Wingo noticed a black Pontiac Trans Am automobile approaching the residence, which is located in a rural area at the dead end of a gravel road. Wingo observed the car stop approximately 200 yards from the residence, back up on the gravel road, turn around, and drive down a side road. Wingo recognized the car as belonging to Morgan, whom Wingo had previously encountered driving the Trans Am. Wingo pursued the car and upon doing so recognized the driver as Morgan. Wingo stopped the car and arrested Morgan. While another trooper remained with Morgan, Wingo went to the residence being searched and informed Major that he had detained Morgan. Major accompanied Wingo to where Morgan had been detained and advised Morgan that he was under arrest for conspiring to manufacture methamphetamine. The officers then searched Morgan's car and found four brown paper sacks, each secured with silver duct tape and containing shredded aluminum foil.

Morgan was indicted for conspiring with Edward Ford and Carla Ford to manufacture and distribute methamphetamine and for manufacturing and aiding and abetting in the manufacture of methamphetamine. Prior to trial, Morgan moved to suppress evidence of the four paper sacks of shredded aluminum foil found in his car. Following a suppression hearing, the district court denied Morgan's motion.

At trial, Carla Ford testified concerning Morgan's role in the methamphetamine operation. Over Morgan's objection, she testified that her husband, Edward Ford, had told her that Morgan distributed the methamphetamine manufactured in the laboratory and that he shredded the aluminum foil to be used in the laboratory.

The jury found Morgan guilty on both counts. The district court sentenced Morgan to 212 months' imprisonment, to be followed by five years of supervised release. This appeal followed.

## II.

Morgan first argues that because the officers lacked probable cause to stop and arrest him, the district court erred in denying the motion to suppress.

The existence of probable cause to make a warrantless arrest depends upon "whether, at the moment the arrest was made, ... the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In making this determination, the court may consider the collective knowledge of all officers involved. *United States v. Woolbright,* 831 F.2d 1390, 1393 (8th Cir. 1987); *United States v. Briley,* 726 F.2d 1301, 1305 (8th Cir.1984); *United States v. Rose,* 541 F.2d 750, 756 (8th Cir.1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1178, 51 L.Ed.2d 584 (1977). "A district court's finding of probable cause to make a warrantless arrest will not be overturned unless clearly erroneous." *Woolbright,* 831 F.2d at 1393.

Agent Major testified at the suppression hearing that prior to the execution of the search warrant he had informed Wingo and the other officers executing the warrant that a confidential informant had said that Morgan was the courier and distributor for the methamphetamine operation. Major knew that the Missouri Highway Patrol had stopped Morgan in his Trans Am and had seized a small amount of marijuana and

$1,000 in cash from him in August 1989. During the execution of the search warrant, the search team discovered an operational methamphetamine laboratory. Subsequent to the discovery of the laboratory, Trooper Wingo observed Morgan's Trans Am approaching the residence. As indicated above, when the car was approximately 200 yards from the residence, it stopped, turned around, and proceeded away from the residence, whereupon Wingo pursued it and ultimately arrested Morgan.

The district court found that Wingo had probable cause to arrest Morgan. Considering the collective knowledge of Agent Major and Trooper Wingo at the time of the arrest, we cannot find the district court's decision clearly erroneous. The officers knew that an informant had said that Morgan was the distributor for the methamphetamine operation. An informant's tip sufficiently corroborated by other factors may serve as the basis for probable cause to arrest. *See, e.g., United States v. Reiner Ramos*, 818 F.2d 1392, 1395 (8th Cir.1987); *Briley*, 726 F.2d at 1306. In this case, the informant's tip was significantly corroborated when the search team found the methamphetamine laboratory that the informant had said existed. The tip was also verified by Morgan's arrival at the residence where the laboratory was located. It was further corroborated by Morgan's stopping and turning around upon seeing the police vehicles present at the residence. Last, the tip was corroborated by the fact that $1,000 in cash had previously been found in and seized from Morgan's Trans Am, thus providing additional evidence that he was the courier for the operation. Taken together, these facts established sufficient grounds to support a belief that Morgan was committing or had committed an offense in connection with the methamphetamine laboratory.

Because probable cause existed for Morgan's arrest, the search of his car's interior, including the paper sacks found therein, was valid as a search incident to a lawful arrest. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).

■ Morgan next argues that the district court erred in admitting Carla Ford's testimony that her husband had told her that Morgan distributed the methamphetamine produced at the laboratory and shredded the aluminum foil for the operation. He contends that this testimony was hearsay that did not meet the requirements of Federal Rule of Evidence 801(d)(2)(E). He also argues that even if the testimony was admissible under Rule 801(d)(2)(E), it was inadmissible under the Confrontation Clause of the Sixth Amendment.

■ A coconspirator's out-of-court statement is not hearsay and is admissible against a defendant under Rule 801(d)(2)(E) if the government demonstrates by a preponderance of the evidence that (1) a conspiracy existed; (2) the defendant and the declarant were part of the conspiracy; and (3) the declaration was made during the course and in furtherance of the conspiracy. *See, e.g., United States v. Kocher*, 948 F.2d 483, 485 (8th Cir.1991). Morgan argues that the government failed to establish that a conspiracy existed and that Morgan and the declarant, Edward Ford, were members of the conspiracy. We disagree. Carla Ford's testimony and other evidence presented by the government sufficiently established a conspiracy of which Morgan and Edward Ford were members.

According to Carla Ford's testimony, her husband Edward began operating the methamphetamine laboratory in the basement of the Merwin residence in the spring of 1989. She paid the bills for the operation and watched the surveillance monitor for vehicles approaching the house. After the laboratory was set up, Morgan began visiting the house about once a month. When he visited, he would go into the basement, even if Edward Ford was not home. At the conclusion of her testimony, Carla Ford stated that her husband had told her that Morgan distributed the methamphetamine produced at the laboratory and shredded the aluminum foil to be used in the laboratory. *See Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987) (holding that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted"). Carla Ford's testimony concerning Morgan's role in the conspiracy was cor-

roborated by the testimony regarding Morgan's short-circuited approach to the residence in an automobile containing four sacks of shredded aluminum foil, each identical to the paper sack of shredded foil found in the basement of the residence.

 Morgan argues that even if the requirements of Rule 801(d)(2)(E) were met, the admission of the statements violated the Confrontation Clause of the Sixth Amendment. The requirements for admission under Rule 801(d)(2)(E) and the requirements for admission under the Confrontation Clause are identical. *Id.* at 182, 107 S.Ct. at 2782. Because the statements were admissible under the Rule, they were also admissible under the Confrontation Clause.

The convictions are affirmed.