**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose Luis SANCHEZ, Defendant– Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose CHAVIANO, Defendant–Appellant.**

**Nos. 94–1023, 94–1025.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1994.

Decided Aug. 24, 1994.

Martin J. Kushner, Omaha, NE, argued, for Sanchez.

Alan G. Stoler, Omaha, NE, argued, for Chaviano.

Michael P. Norris, Omaha, NE, argued, for appellee.

Before MAGILL and LOKEN, Circuit Judges, and FRIEDMAN *, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The principal issue is whether the United States District Court for the District of Nebraska ** correctly denied the appellants' motion to suppress cocaine and other evidence seized from a tractor-trailer they were driving in Nebraska following a search of the vehicle to which they had consented. They contend that their consent was not voluntary and therefore was invalid. We uphold the search because the district court's finding that the state officer who made it reasonably believed that the appellants had consented to the search is not clearly erroneous. We also reject the appellants' challenge to the sentences. Accordingly, we affirm the convictions and sentences.

* DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

** The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

## I.

A. The evidence relating to the search, as developed at the evidentiary hearings before the magistrate-judge on the motions to suppress, is not contested.

The appellant Chaviano was driving a tractor-trailer on a highway in Nebraska. The truck was owned by Evelio Perez–Hernandez, and the appellant Sanchez was sitting in the passenger seat next to Chaviano. When the truck pulled into a weighing station, Rodney Ford, a Nebraska Carrier Enforcement Officer, saw that the truck did not have a front license plate. Ford asked the two men to bring their driver's licenses and the vehicle registration to the office.

Chaviano and Sanchez entered the office, and approached Officer Ford, who began a routine inquiry into the appellants' destination, permits, license, and origination point. Ford initially addressed the driver Chaviano, but found that Chaviano did not understand. Sanchez informed Ford that Chaviano did not speak English and that Sanchez would interpret. Ford spoke with Sanchez, who claimed to be fluent in both Spanish and English. Ford requested Chaviano's driver's license. Sanchez spoke in a foreign language to Chaviano, who produced a driver's license for Evelio Perez–Hernandez, with a Miami, Florida residence.

Ford made a check on Perez–Hernandez's license and found that the license had been suspended.

The scale on the truck indicated that the trailer was either empty or light.

Sanchez informed Ford that Sanchez and Chaviano had begun their trip in Ontario, California and were going to Chicago, Illinois. Ford recalled from drug trafficking training that Ontario, California is a point of origin for drugs, and decided to look for drugs. He gave Sanchez a standard printed consent form, captioned "PERMISSION FOR SEARCH AND SEIZURE," to search the vehicle and asked Sanchez to explain the form to Chaviano. Ford told Sanchez that he needed to look in the truck and that Chaviano and Sanchez would have to sign the form authorizing a search of the vehicle.

Ford watched as Sanchez conversed with Chaviano in a foreign language. Ford believed that in this conversation, Sanchez explained to Chaviano Ford's need to look in the truck and what the consent-to-search form meant. Ford then observed Chaviano sign the form, scribble over the initial signature and then affix the name Evelio Perez on the signature line. Sanchez then signed the form on the witness line and gave the form to Ford who, in turn, signed and dated the form.

Ford walked with the appellants to the back of the trailer, and asked Sanchez to open it. Without objection, Sanchez did so. Ford climbed in the trailer while the appellants stood nearby. The appellants were silent as Ford walked toward the front part of the trailer, where he observed sealed boxes. Ford then left the trailer and asked about the boxes. Sanchez said the boxes were empty.

Ford thought it peculiar that the appellants would haul sealed empty boxes. He returned to the front end of the trailer, while the appellants remained silent. Upon opening one box, Ford observed what he believed to be kilogram bricks of cocaine. He returned to Sanchez and Chaviano, placed them under arrest, and escorted them back to the office, where the Nebraska State Patrol was called. When asked at the preliminary hearing: "At the time in which you conducted a search of the trailer, did you believe that you had consent to search that trailer?"; Officer Ford replied, "Yes."

The state patrol removed 269 kilograms of cocaine from the trailer. A later search of the tractor revealed an additional kilogram in the glove box. Laboratory analysis confirmed that the substance was cocaine.

Sanchez and Chaviano agreed to cooperate with the Drug Enforcement Agency (DEA) and assist in the controlled delivery of the tractor-trailer and its contents to New York. Sanchez and Chaviano told the DEA that they had been hired to transport the cocaine from Ontario, California to New York. Sanchez's function was to interpret for Chaviano. The appellants completed their delivery and two other persons were arrested.

B. In a superseding indictment, Sanchez, Chaviano and Perez–Hernandez were charged with conspiring to distribute and possessing with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846 and with knowing and intentional possession, with intent to distribute, of more than five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1).

Chaviano and Sanchez each moved to suppress the cocaine and the other evidence seized from the tractor-trailer. After evidentiary hearings, the magistrate-judge recommended that the motions be denied. She concluded that the government had established that Chaviano voluntarily consented to the search, and that Ford had a reasonable belief that there was consent when Chaviano signed the consent form and failed to object when Ford began searching the trailer, and that the facts showed probable cause for the search. With respect to Sanchez' motion, she concluded that Sanchez failed to establish standing to object to the search, but that in any event Chaviano validly consented to the search and that Ford had a good faith reasonable belief that he had obtained consent to search.

The district court approved and adopted the recommendations of the magistrate-judge, and denied the motions to suppress.

The court held that "Chaviano gave valid consent to the search. In addition, the only reasonable conclusion which can be drawn from the totality of facts and circumstances, as established by the testimony presented at the hearing, is that the officer had a good faith belief that he had consent to conduct the search." The court agreed with the magistrate-judge's finding that Sanchez did not have standing to object to the search, but further ruled that "[e]ven assuming standing, the Court's finding that Chaviano gave a valid consent would be dispositive of the defendant's respective motions."

In accordance with plea agreements and pursuant to Fed.R.Crim.P. 11(a)(2), Sanchez and Chaviano tendered conditional pleas of guilty to the possession count and reserved the right to appeal from the district court's denial of their motions to suppress.

## II.

The appellants contend that Chaviano could not voluntarily have consented to the search because he spoke only Spanish, not English; Ford spoke only English, and did not have a Spanish interpreter, through whom he could speak to Chaviano; Ford could not have known what Sanchez told Chaviano in Spanish about the consent form and Ford's proposed search of the tractor-trailer; and Chaviano did not understand the consent form he signed because it was in English. It is unnecessary to decide that issue, however, because the search may be upheld on the ground that Ford reasonably believed that Chaviano voluntarily consented to the search. *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

A. The question in *Rodriguez* was "[w]hether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." 497 U.S. at 179, 110 S.Ct. at 2796. There, Ms. Fischer, who had shared an apartment with Rodriguez, opened the door to the apartment from outside with her key and gave the police officers permission to enter, to arrest Rodriguez for assaulting her. The police entered the apartment without a warrant, and found illegal drugs there. Rodriguez was indicted in state court for drug possession. The Illinois courts suppressed all the evidence seized from the apartment, on the ground that Fischer had no authority to consent to the police's entry into the apartment because she did not have common authority (with Rodriguez) over the apartment. The trial court "rejected the State's contention that, even if Fischer did not possess common authority over the premises, there was no Fourth Amendment violation if the police reasonably believed at the time of their entry that Fischer possessed the authority to consent." *Id.* at 180, 110 S.Ct. at 2797.

The Supreme Court reversed and remanded, upholding the state's contention that

"even if Fischer did not in fact have authority to give consent, it suffices to validate the entry that the law enforcement officers reasonably believed she did." *Id.* at 182, 110 S.Ct. at 2798. The Court stated that

in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government— whether the magistrate issuing the warrant, the police officer executing the warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable.

*Id.* at 185, 110 S.Ct. at 2800.

It then stated:

We see no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape.

*Id.* at 186, 110 S.Ct. at 2800.

The Court concluded:

In the present case, the Appellate Court found it unnecessary to determine whether the officers reasonably believed that Fischer had the authority to consent, because it ruled as a matter of law that a reasonable belief could not validate the entry. Since we find that ruling to be in error, we remand for consideration of that question.

*Id.* at 189, 110 S.Ct. at 2801.

In *Jimeno*, the question was whether a suspect's consent to the search of his automobile for narcotics authorized the officer to

open a closed paper bag found on the floor of the car, which contained heroine. The Florida courts suppressed the heroine on the ground that the consent to search of the automobile did not include search of a sealed container within the automobile. The Supreme Court reversed, holding that "a criminal suspect's Fourth Amendment right to be free from unreasonable searches is [not] violated when, after he gives a police officer permission to search his automobile, the officer opens a closed container found within the car that might reasonably hold the object of the search." *Id.* at 249, 111 S.Ct. at 1803.

Citing *Rodriguez*, the Court stated:

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" The question before us, then, is whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car. We think that it is.

*Id.* at 251, 111 S.Ct. at 1803–04. (Citations omitted.)

The Court held, "[w]e think that it was objectively reasonable for the police to conclude that the general consent to search respondent's car included consent to search containers within that car which might bear drugs." *Id.*

After *Rodriguez* and *Jimeno*, other courts of appeals have upheld searches where the officer had a reasonable basis for believing that there had been consent to the search.

In *United States v. Richard*, 994 F.2d 244 (5th Cir.1993), the Court upheld a search where although the district court found that the consent was "invalid as a matter of law ... both agents reasonably believed they had consent to search...." *Id.* at 252. In *United States v. De Leon–Reyna*, 930 F.2d 396 (5th Cir.1991), the Court interpreted *Rodriguez* as saying that a "search would be valid if the officers' belief that they had consent, in light of all the circumstances, was objectively reasonable." *Id.* at 399. *See also United*

*States v. Gutierrez–Mederos,* 965 F.2d 800, 803 (9th Cir.1992) ("Because a reasonable person would believe that appellant had authorized these actions, the search was permissible"); *United States v. Salinas–Cano,* 959 F.2d 861, 865 (10th Cir.1992) ("the Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, as distinguished from a mistake of law ... [i]n other words, 'Rodriguez ... applies to situations in which an officer would have had valid consent to search if the facts were as he reasonably believed them to be' ").

The substantive consent issue in the present case is different from that in *Rodriguez* and *Jimeno.* In *Rodriguez,* the question was whether Fischer had authority to consent to the search. In *Jimeno,* it was the scope of the consent. In the present case, the primary issue is whether Chaviano's consent was given voluntarily and with awareness of what was involved. Those differences, however, do not call for a different result in the present case.

■ "The touchstone of the Fourth Amendment is reasonableness." *Jimeno,* 500 U.S. at 250, 111 S.Ct. at 1803. Here, as in *Rodriguez,* "to satisfy the 'reasonableness' requirement of the Fourth Amendment, what" was "demanded of" the factual determination that Ford had to make—whether Chaviano's consent to the search of the tractor-trailer was voluntary and understanding—was not that it "be correct, but that [it] be reasonable." 497 U.S. at 185, 110 S.Ct. at 2800. In the language of *Jimeno,* the issue is "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" 500 U.S. at 251, 111 S.Ct. at 1803–04. If, considering the totality of the circumstances, it was reasonable for Ford to have concluded that Chaviano voluntarily had consented to the search, the search passed muster under the Fourth Amendment.

■ B. The magistrate-judge found that Chaviano voluntarily had consented to the search, and the district court adopted the magistrate-judge's findings and conclusions. We review the district court's "determination of whether a voluntary consent to a search

was given" under the clearly erroneous standard, *United States v. Barahona,* 990 F.2d 412, 417 (8th Cir.1993). The same standard of review governs the district court's factual determination that the officer reasonably believed that the consent to search was voluntary. That determination by the district court in this case was not clearly erroneous.

Although Chaviano did not speak English and Ford did not speak Spanish, Ford was able to communicate with Chaviano through Sanchez, who spoke English and told Ford that he was serving as Chaviano's interpreter. When Ford requested Chaviano's driver's license, Sanchez spoke to Chaviano in Spanish and Chaviano produced a license. When the license turned out to be that of someone other than Chaviano and no longer valid, Ford presented Sanchez with a written consent form and explained its purpose. Sanchez and Chaviano then had a further discussion in Spanish, after which Chaviano and Sanchez both signed the consent form. In each instance Sanchez appeared to translate what Ford said to a language Chaviano could understand, and Chaviano complied with Ford's requests.

When Ford indicated that he wished to look inside the truck, neither Sanchez nor Chaviano objected and Sanchez opened the rear of the truck. *See Barahona,* 990 F.2d at 417 (passively looking on or actively assisting rather than objecting to a search is one factor indicating consent). Ford testified that he believed he had consent to search the trailer. Upon discovering the sealed boxes in the front of the truck, Ford asked Sanchez what they contained and Sanchez said they were empty. Knowing that Ontario, California, where the trip originated, was a frequent starting point for drug shipments, and considering it improbable that the large truck would be carrying a number of sealed empty boxes across the country, Ford then opened one of the boxes and discovered cocaine. Neither Sanchez nor Chaviano offered any objection when Ford opened the boxes.

Considering all of the circumstances, including the lack of a coercive environment, the discussions between Sanchez and Chaviano and their signing of the consent form,

and their failure to object and active cooperation, the district court and the magistrate-judge justifiably concluded that Ford reasonably believed that Chaviano voluntarily had consented to the search.

Sanchez contends, however, that Chaviano's consent covered only an inspection of the outside of the vehicle and a search of the cab of the tractor, but did not cover the interior of the trailer. If Chaviano consented to only such a limited search—and Sanchez necessarily knew any limits Chaviano had imposed upon the search to which he consented—it is surprising that without protest Sanchez opened the rear of the trailer at Ford's request, and that neither Chaviano nor Sanchez objected when Ford entered the trailer, walked to the end of it, and subsequently opened the sealed boxes there that Sanchez had told him were empty. Ford reasonably concluded that Chaviano had consented to a search of the entire vehicle, including the interior of the trailer.

### III.

Both a statute and the United States Sentencing Guidelines provide for the prosecution to seek a lower sentence for a defendant who has cooperated with the government. Under 18 U.S.C. § 3553(e) (1988), the district court, on the government's motion, may impose a sentence below a statutory minimum "so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." Section 5K1.1 of the Guidelines authorizes the court on the government's motion to "depart from the guidelines" to reflect such assistance by a defendant. In *United States v. Rodriguez–Morales,* we held that when the prosecution seeks a downward departure because of the defendant's cooperation only pursuant to Section 5K1.1 of the Guidelines, but does not seek departure pursuant to 18 U.S.C. § 3553(e), the district court cannot depart below the statutory minimum sentence. 958 F.2d 1441, 1447, *cert. denied,* —— U.S. ——, 113 S.Ct. 375, 121 L.Ed.2d 287 (1992).

Sanchez and Chaviano's plea agreements provided that the government would seek a downward departure pursuant to Section 5K1.1 of the Guidelines, but "will *not*" move for "downward departure under 18 U.S.C. § 3553(e) allowing the Court to depart the ten year mandatory minimum sentence.... The United States' refusal to depart below the mandatory minimum recognizes the intervening period between the arrest and the present time wherein defendant[s were] unavailable to participate in the prosecution of others whom [they] had initially assisted in obtaining their arrest."

Pursuant to the plea agreement, the government moved pursuant to Section 5K1.1 for a downward departure. The district court granted the motion and imposed the ten-year minimum, stating that it was bound by *Rodriguez–Morales,* but that if it could it would have gone below that number.

 The appellants argue that *Rodriguez–Morales* was wrongly decided, state that it is "contrary to the decisions of nearly every federal circuit" and urge that "this Court should reconsider its decision." Since only an en banc court may overrule a panel decision, *Liberty Mutual Ins. Co. v. Elgin Warehouse & Equipment,* 4 F.3d 567, 571 (8th Cir.1993), we treat the suggestion as a request that the panel recommend en banc reconsideration to the full court.

This court, however, has at least twice reaffirmed *Rodriguez–Morales. United States v. Womack,* 985 F.2d 395, 399, *cert. denied,* —— U.S. ——, 114 S.Ct. 276, 126 L.Ed.2d 227 (1993); and *United States v. Hawley,* 984 F.2d 252, 253–54 (1993). The law on that issue is now well settled in this circuit and we see no occasion to recommend *en banc* reconsideration of our prior rulings.

### CONCLUSION

The orders of the district court denying the appellants' motions to suppress, and the sentences of both appellants, are affirmed.