**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1085
_____

United States of America,        *
                                 *
         Appellant,              *
                                 *
         v.                      *
                                 *
Larry Duane Conner,              *
                                 *
         Appellee.               *
                                  Appeal   from   the   United
States
------------------------------------------        District
Court for the
                                  Northern District of Iowa

United States of America,        *
                                 *
         Appellant,              *
                                 *
         v.                      *
                                 *
John Charles Tilton,             *
                                 *
         Appellee.               *

_____

Submitted:  June 12, 1997

Filed:  October 8, 1997

_____

Before MURPHY and HEANEY, and NORRIS,[1] Circuit Judges.
_____

HEANEY, Circuit Judge.

The government appeals the district court's suppression of evidence obtained after police demanded entry into a motel room rented by appellants. We affirm.

I.

On February 22, 1996, a federal grand jury in the Northern District of Iowa returned separate two-count indictments against Larry Duane Conner and John Charles Tilton charging each with being a convicted felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and with possession of a stolen firearm, 18 U.S.C. § 922(j). Both defendants moved to suppress evidence seized pursuant to a search warrant authorizing the search of Room 31 at the Elmdale Motel in Sioux City, Iowa. Conner also moved to suppress evidence seized from his home pursuant to a warrant. Conner and Tilton argued that the court should suppress the evidence obtained pursuant to the warrants because police used illegal methods to obtain the information relied on to establish the probable cause to issue the search warrant. After an evidentiary hearing, the district court granted the motions to suppress. The court agreed that essential information in the search warrant affidavits was obtained in violation of the Fourth Amendment. The court rejected the government's contention that the evidence was admissible under either

[1]The Honorable William A. Norris, United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

the good-faith exception or the independent-source exception.

We find no clear error in the district court's detailed factual findings. <u>See</u> <u>United States v. Murray</u>, 34 F.3d 1405, 1409 (8th Cir. 1994) (standard of review) (citations omitted). Police in Sioux City, Iowa were investigating a burglary that occurred in late

December 1995.  The victim had given police a detailed description of  the stolen items, which included a large coin collection, jewelry, silver place settings, and three handguns.  Several days after the burglary, police received an anonymous telephone call reporting that Larry Conner and John Tilton had committed the burglary and that they were staying at an unknown hotel or motel in Sioux City.  According to the caller, Conner and Tilton had the coins with them and they were preparing to leave the city later that day to dispose of the stolen property.  They reportedly had been driving a red Pontiac Fiero with Iowa license plate WEH624.

Based on the anonymous tip, police checked area motels and hotels for the red Fiero.  Because three handguns had been taken in the burglary, the investigators believed that Conner and Tilton might be armed.  Two Sioux City police detectives located the Fiero in front of Room 31 at the Elmdale Motel and called for backup.  In all, six police officers were on the scene; only one was in uniform.  Sergeant Young, the officer in charge, testified that he planned to knock on the front door of the room and attempt to speak to individuals inside about the burglary. He incorrectly assumed that one of the other officers had checked with the motel office to ascertain who had rented Room 31.  In fact, at the time the officers approached Room 31, they did not know that Conner had rented the room.  The officers approached Room 31 solely because they observed the red Fiero parked in front of it.

Two officers, including Sergeant Young, went to the door of Room 31; two others positioned themselves by the room's picture window; and two officers took up positions

4

behind the motel.  One of the officers, who knew nothing about the burglary except what he had been told when he arrived at the motel, noticed packages of coins on the windowsill between the room's curtains and window.  He attempted to draw the coins to the attention of the officer in charge, but no other officer noticed the gesture or the coins on the windowsill.

An officer knocked on the door and identified himself as a police officer.  No one in the room responded.  The officer knocked again, and announced a second time that he was a police officer.  One of the officers stationed by the window saw someone move aside the drawn curtains and look out of the window.  In response, the police repositioned themselves for better protection, and at least one officer drew his pistol and held it behind his back.  The officer at the door knocked again and announced the police presence.  In addition, Sergeant Young shouted, "Open up," in a voice loud enough to be heard by a motel resident two rooms away.  The officers were loud enough to awaken another guest and cause her to step out of her room under the mistaken belief that the police were knocking at her door.

Shortly after the officers' third attempt, Tilton opened the door to the room.  The district court explicitly found that Tilton opened the door in response to Sergeant Young's command.  When Tilton opened the door, officers observed what appeared to be foreign currency, coins, and envelopes the size of currency on the bed and blue, gold, and maroon boxes matching the victim's description scattered throughout the room.  Believing that the currency and other materials were related to the burglary, Sergeant Young drew his weapon on Tilton, ordered him to back away from the door, and placed him under arrest.  Another officer found Conner in the bathroom and arrested him as well.

The officers stayed in the motel room to secure the evidence but did not conduct a search of the room until they obtained a warrant.  The search warrant application

6

included the following information:  "Officers knocked on the [motel] door and identified themselves and Mr. Tilton opened the door.  At that time, in plain view were coin rolls and coin sets throughout the room."  The police obtained a search warrant for the motel room and seized a Smith & Wesson .38 caliber revolver, a Colt pistol, coins, three large briefcases, and other items believed to have been taken during the burglary.  After searching the room, police obtained a warrant for Conner's residence in Sloan, Iowa based on the same facts used to support the first warrant and a list of the items

seized from the motel room.  During the search of Conner's house, law enforcement officers seized items they believed had also been taken during the burglary.

## II.

Based on these facts, we agree with the district court that the officers' entry into the motel room and arrest of the occupants violated Conner's and Tilton's Fourth Amendment rights.  It is a well-established constitutional principle that law enforcement officers may not enter a person's home without a warrant unless the entry is justified by exigent circumstances or the consent of the occupant.  Steagald v. United States, 451 U.S. 204, 211 (1981); Payton v. New York, 445 U.S. 573, 586 (1980).  In Payton, the Supreme Court explained that no zone of privacy is more clearly defined than a person's home: "[T]he Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."  445 U.S. at 590.  The same protection against unreasonable searches and seizures extends to a person's privacy in temporary dwelling places such as hotel or motel rooms.  Hoffa v. United States, 385 U.S. 293, 301 (1966); Stoner v. California, 376 U.S. 483, 490 (1964); United States v. Rambo, 789 F.2d 1289, 1295 (8th Cir. 1986).

The government contends that Payton does not apply because the police did not "enter" the motel room; they merely observed contraband in plain view when Tilton opened the door.  In other words, the government asserts that Conner and Tilton voluntarily engaged with the police

at the motel.  See United States v. Deanda, 73 F.3d 825, 825-26 (8th Cir. 1996) (person who opens door voluntarily or in response to a simple knock by police knowingly exposes to the public anything that can be seen through the door thereby defeating any possible Fourth Amendment arguments because it involves no "search."); United States v. Peters, 912 F.2d 208, 210 (8th Cir. 1991) (same).  The district court, however, correctly determined that an unconstitutional search occurs when officers gain visual or physical access to a motel room after an

occupant opens the door not voluntarily, but in response to a demand under color of authority. See United States v. Jerez, 108 F.3d 684, 692 (7th Cir. 1997); United States v. Tovar-Rico, 61 F.3d 1529, 1535-36 (11th Cir. 1995); United States v. Winsor, 846 F.2d 1569, 1572 (9th Cir. 1988) (en banc). Further, we find no error in the district court's determination that, under the totality of circumstances, Tilton did not voluntarily consent to the officers' entry into the motel room.[2] Thus, the police officers' action constituted an unconstitutional intrusion into that zone of privacy.[3]

---

[2]In fact, the district court's determination that the police entered Room 31 under color of authority is well supported by the record. Four police officers were positioned at or near the door. They knocked on the door longer and more vigorously than would an ordinary member of the public. The knocking was loud enough to awaken a guest in a nearby room and to cause another to open her door. Several minutes passed before Conner or Tilton responded to the knocks. Before Tilton opened the door, he looked out the window to assess the forces outside. Only after two of the officers had identified themselves as police and demanded him to "open up" did he concede to that demand.

[3]Our analysis of the entry of the motel room under Payton necessarily rejects the government's argument that we should assess the police officers' command to open the door under a reasonableness standard. See Terry v. Ohio, 392 U.S. 1 (1968). The government asserts that the demand was part of a brief, investigatory questioning consistent with the Fourth Amendment and that the occupants of the room "control" the situation--they decide how far to open the door and what objects to leave in plain view during the questioning. This argument is as detached from real life as it is from established constitutional principles. Despite the four police officers outside the room and the two other officers in the general area, Conner and Tilton attempted without success to "control the nature of the encounter" by refusing to answer the door. Also, once inside the room, the officers would be entitled to make a sweep of the motel room to ensure their safety during questioning. Thus, it is disingenuous to assert that the defendants could have limited the officers' exposure to the room by opening the door just a crack. Finally, if the police could demand entry into a person's home or hotel

10

As an alternative basis for reversal, the government argues that either the good-faith or the inevitable-discovery exception to the exclusionary rule renders the evidence admissible despite the Fourth Amendment violation in gaining access to the motel room.   The government contends that the evidence obtained in the searches of the motel room and Conner's home should be admissible even if we find the warrant invalid because law enforcement officers reasonably relied on warrants issued by a neutral magistrate.   See United States v. Leon, 468 U.S. 897, 922 (1984).   The rule in Leon is based on the theory that where there has been no police illegality, there is no conduct the courts need to deter and therefore no basis to enforce the exclusionary rule.   As the Supreme Court stated:   "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations."   Leon, 468 U.S. at 921.   The ultimate question under Leon is whether the officers "had an objectively reasonable basis to believe they were complying with [applicable law] and the Fourth Amendment."   United States v. Moore, 956 F.2d 843, 848 (8th Cir. 1992).   In the context of investigatory stops, we have stated that suppression is unwarranted where pre-warrant police conduct was "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable."   United States v. White, 890 F.2d 1413, 1419 (8th Cir. 1989); United States v. Fletcher, 91 F.3d 48, 51 (8th Cir. 1996). If, on the other hand, the officers' pre-warrant conduct

room to investigate suspected criminal activity in situations where they lack a warrant or even probable cause to search or arrest, the Fourth Amendment rule would be swallowed by the Terry exception.

is "clearly illegal," the good-faith exception does not apply.  United States v. O'Neal, 17 F.3d 239, 242-43 n.6 (8th Cir. 1994).

The district court concluded that the government could not invoke Leon in this case because "[n]o officer could in good faith believe, under the facts as they existed at the time, that the defendants consented to the officers' visual or physical access to the motel room."  United States v. Conner, 948 F. Supp. 821, 853 (N.D. Iowa 1996). Nor could the police reasonably believe that exigent circumstances justified the intrusion on Conner and Tilton's reasonable expectation of privacy.  Id. at 854. Sergeant Young stated that he planned only to talk to the occupants of Room 31 and that he lacked probable cause to arrest prior to viewing the contents of the room.  In

fact, none of the officers involved even knew to whom the room was rented.  We agree with the district court that the exception in Leon does not salvage the warrantless entry by police.

Finally, for the first time on appeal, the government advances the argument that even if the police had not commanded the defendants to open the door to the motel room, they inevitably would have discovered the evidence through independent search warrants.  See Nix v. Williams, 467 U.S. 431, 433 (1984).  Although we need not address an issue that was not raised below, see United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995); United States v. Chalmers, 800 F.2d 737, 738 (8th Cir. 1986), the district court made factual findings that dispose of this claim and those factual findings are not clearly erroneous.  To succeed under the inevitable-discovery exception to the exclusionary rule, the government must prove by a preponderance of the evidence:  (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.  United States v. Wilson, 36 F.3d 1298, 1304 (5th Cir. 1994).  The district court concluded that there was no independent basis for admission of the evidence.  Specifically, the court found that the officers would not have sought either search warrant but for their observation of what they believed to be the proceeds of the Uhlir burglary following their illegal entry into the motel room.  Conner, 948 F. Supp. at 859.  Given that finding and the fact that the government offers no concrete evidence that

13

police explored any alternative investigatory approach, we find no basis to apply the inevitable-discovery exception to this case.

## III.

Police officers entered appellees' motel room in violation of the Fourth Amendment. The evidence obtained following that entry, including that which police seized pursuant to search warrants, was tainted by the illegal entry and the evidence

14

was properly excluded over the government's assertions of good faith and inevitable discovery. Therefore, we affirm the district court's suppression order.

MURPHY, Circuit Judge, dissenting.

Since I believe that the police were justified in the investigation they undertook and that their conduct did not violate the fourth amendment, I respectfully dissent.

On December 25, 1995, the Sioux City police received a report of a burglary at the Uhlir residence. Among the stolen items were a coin collection worth approximately $100,000, a Chrysler LeBaron convertible, and three handguns. The officers investigating the burglary received a tip from an anonymous source on the morning of January 2. The tip indicated that Larry Conner and John Tilton had been seen with the stolen coins in a red 1986 Pontiac Fiero with Iowa license plate WEH624. The source further stated that the two suspects were staying in a Sioux City motel but were planning to leave town that same day to dispose of the stolen property.

Police were dispatched to locate the Pontiac Fiero with a warning that the suspects might be armed because weapons and ammunition were taken in the burglary. Two officers found the car at the Elmdale Motel. Access to the motel rooms was directly from the parking lot, and the police observed a number of cars parked in front of rooms, including the red Fiero parked outside of room 31.

When Sergeant Young, the officer in charge of the investigation, arrived on the scene, he and officer Hein,

15

who was in uniform, approached the door of room 31 in the hope of talking with the occupants.  Young was already familiar with Larry Conner and knew he had prior offenses involving drugs and burglaries.  Detectives Iddings and Polak positioned themselves next to the room's picture window at one side of the door.  After knocking and identifying themselves at least twice, the officers observed someone inside the room peer out the window, but no one came to the door.  Detective Iddings

also saw on the inside windowsill some coins packaged in clear protective covers which he recognized from a briefing describing the Uhlir burglary. He pointed at the coins in the hope of attracting Sergeant Young's notice, but Young was repositioning himself next to the door outside the line of fire. Hein knocked again more loudly and Young called out, "Open up."

At this point John Tilton opened the door, and he opened it wide enough so that Young could see the items taken in the burglary in plain view. Tilton and Conner were placed under arrest and given Miranda warnings. Young directed two of the officers to secure the room, but not to search further or touch anything. He and another officer left to get search warrants for the room and for Conner's residence, and evidence was later gathered pursuant to those warrants.

We review the district court's ultimate conclusion on probable cause and exigent circumstances de novo. See United States v. Ball, 90 F.3d 260, 262 (8th Cir. 1996) (citing Ornelas v. United States, --- U.S. ---, 116 S.Ct. 1657, 1663 (1996)). Before the officers approached the motel room door, they had already located the vehicle with the exact make, model, color, and license plate described in the tip, and the car was parked at a local motel as the tip had indicated it would be. Even though they had knocked and identified themselves as police, no one had answered the door, and Iddings had observed coins through the window which appeared to be those taken from the Uhlir

home.[4]  At this point the officers had probable cause to believe that the burglars and the stolen property were inside of room 31.

There also was reason to believe there was a risk of flight or of danger to others in the vicinity.  The officers knew that the proceeds of the burglary included three handguns and ammunition, and they had reason to suspect the burglars would be armed.  The only element of the tip not yet corroborated at the time the police asked that the door be opened was the information that the suspects intended to leave town that day to dispose of the goods.  Since the rest of the tip had proven to be reliable, there was reason to suspect that attempted flight was imminent.  In such exigent circumstances immediate police action is justified without the delay required to obtain a warrant.  See Ball, 90 F.3d at 263.

For these reasons the police were justified in ordering the occupants to open the door and their conduct did not violate the fourth amendment.  They went no further without first obtaining a warrant, and it was the occupants who opened the door wide enough to permit the

_____

[4]The collective knowledge of all officers involved in an investigation is relevant to determining whether there was probable cause to make an arrest or search.  See United States v. Horne, 4 F.3d 579, 585-86 (8th Cir. 1993), cert. denied, 510 U.S. 1138 (1994); United States v. Morgan, 997 F.2d 433, 435-36 (8th Cir. 1993).  In this case the officers had all been briefed on the circumstances of the burglary and the anonymous tip, and they were working right next to each other at the scene, responding to rapidly unfolding events.  See United States v. Shareef, 100 F.3d 1491, 1504 (10th Cir. 1996); Collins v. Nagle, 892 F.2d 489, 495 (6th Cir. 1989).

burglarized property to be seen.  The order suppressing the evidence should be reversed.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.