# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1101

_____

UNITED STATES OF AMERICA,     *
                                    *

        Plaintiff/Appellee,     * Appeal from the United States
                                  * District Court for the Eastern
   v.                               * District of Missouri
                                  *

PHILLIP W. HAMMONS,         *
                                  *

        Defendant/Appellant.     *
                                  *

_____

Submitted: May 12, 1998
Filed: August 26, 1998

_____

Before BEAM and MURPHY, Circuit Judges, and MELLOY,[1] Chief District Judge.

_____

_____

[1] The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

MELLOY, Chief District Judge.

On October 6, 1997, Phillip Hammons entered a conditional guilty plea pursuant to Fed. R. Crim. P. 11(a)(2), to possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court[1] sentenced Hammons to 80 months imprisonment and five years supervised release. The only issue Hammons raises on appeal is whether the district court clearly erred in denying his motion to suppress. After a careful review of the record, we affirm the district court.

## I. Background

Around 8:30 a.m. on June 20, 1997, a highway patrol officer stopped Mr. and Mrs. Hammons as they were driving a rental car east through Missouri. According to the officer, Mr. Hammons was driving in the passing lane of Interstate 70 without changing into the center or left lane, and traffic had begun to back up behind him. When the officer pulled them over and asked Mr. Hammons for his identification, Mr. Hammons gave the officer a state identification card, then admitted that his California driver's license had been suspended. Hammons explained that his wife, who was sitting next to him in the passenger seat, had been driving, but that he had taken over because she was tired.

---

[1] The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

The officer took Mr. Hammons back to the patrol car while Hammons' wife waited in the rental car. The officer checked Mrs. Hammons' driver's identification to confirm that it was valid. The officer also examined the rental agreement, which indicated that the car had been rented in Mrs. Hammons' name in Las Vegas. After writing a ticket and summons for Mr. Hammons for driving without a valid license, the officer asked Hammons why he and his wife had rented a car in Las Vegas when they lived in California. Hammons said that flying to Las Vegas and renting a car there was less expensive than renting one in California.

After speaking with Mr. Hammons, the officer walked back to the rental car to speak with Mrs. Hammons; as he did this, Mr. Hammons remained at the front door of the police car. The officer told Mrs. Hammons that she would have to drive, so Mrs. Hammons slid over to the driver's seat. When she slid over, the officer noticed that she seemed very nervous. He motioned to Mr. Hammons to return to the rental car and told him that he was "free to go." He then turned back to Mrs. Hammons and asked if they had any drugs or guns in the car. When Mrs. Hammons said no, the officer asked if he could search the vehicle to make sure that she was telling the truth. Mrs. Hammons agreed to the search and handed the officer the car keys so he could search the trunk. When the officer opened the trunk, he saw several pieces of luggage, a box of shirts, a briefcase, and a silver garment bag. Working his way toward the front of the trunk, he found a brown garment bag and felt the outside of it. After feeling a hard rectangular object, he opened the garment bag and pulled out a black jacket. A large manila envelope was inside the jacket, stapled shut.

3

At this point, Mr. Hammons had finished walking back to the rental car. He was standing nearby when the officer pulled the envelope out of the garment bag, so the officer asked Hammons what it was. When Hammons said that he did not know, the officer–who had realized that the garment bag contained men's clothing–asked Hammons if the garment bag belonged to him. Hammons acknowledged that it did, so the officer asked Hammons twice again if he could open the package. When Hammons said nothing and simply stared at the ground, the officer told Hammons that he could answer "yes" or "no," to which Hammons responded that he did not want to say yes. The officer told Hammons that he thought the package contained drugs and that he would call a drug dog to conduct a sniff test of the package. When Hammons heard this, he said that he did not want his wife to get in trouble. The officer continued to speak with him, and eventually, Hammons said there was "contraband" in the package. The officer then gave Hammons his *Miranda* rights and asked Hammons yet again if he could open the envelope, at which point Hammons said to "go ahead." The envelope contained four packages of cocaine. Both Mr. and Mrs. Hammons were arrested and taken to the police station, where Mr. Hammons made several inculpatory statements. Mrs. Hammons was not charged with any crime.

Mr. Hammons filed a motion to suppress evidence of the cocaine and the statements that he had made. After an evidentiary hearing, the court ruled that Mrs. Hammons' consent to search the trunk extended to the brown garment bag in the trunk. The court also found that Mr. Hammons' consent to open the envelope was involuntary, but that nevertheless, the cocaine was admissible because of the inevitable discovery doctrine. The statements that Mr. Hammons made while

4

standing next to the trunk were suppressed, but the cocaine and the statements he made later at the police station were not. The sole issue before this Court is whether the cocaine was admissible.[2]

## II. Discussion

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. CONST. amend. IV. Mr. Hammons argues that this right was violated when the officer searched Mr. Hammons' personal garment bag without having obtained Mr. Hammons' consent to search it. Because the officer also failed to obtain Mr. Hammons' voluntary consent to open the envelope found inside the garment bag, Mr. Hammons asserts that his Fourth Amendment right was again violated when that envelope was opened without his permission. He argues that the inevitable discovery doctrine provides no basis for refusing to suppress the cocaine found inside the envelope.

---

[2] The government did not file any objections to the magistrate judge's report and recommendation to suppress the statements that Mr. Hammons made while standing next to the trunk. *See* Report and Recommendation issued by the Honorable David D. Noce, Magistrate Judge for the Eastern District of Missouri, dated September 17, 1997. The defendant did object to part of the report and recommendation, which included objecting to the finding that the statements made at the station were lawfully obtained.

The district court adopted the report and recommendation and suppressed the statements that Mr. Hammons had made while standing next to the trunk. The statements Mr. Hammons made later at the police station were not suppressed.

Neither the government nor the defendant appealed this ruling suppressing the statements made near the trunk but admitting the statements made later at the station, so that issue is not before this Court.

We review the facts supporting a district court's denial of a motion to suppress for clear error, although we review de novo the legal conclusions that are based upon those facts. *United States v. Cunningham*, 133 F.3d 1070, 1072 (8th Cir. 1998), *cert. denied*, –U.S.–, 118 S.Ct. 1823 (1998), *citing Ornelas v. United States*, 517 U.S. 690, 698-99 (1996).

## A. Mrs. Hammons' Consent

Both parties agree that because the car was rented in Mrs. Hammons' name, she had authority to consent to its search. By obtaining Mrs. Hammons' consent to search the car, the officer also obtained consent to search a closed container in that car, provided that it was objectively reasonable for the officer to believe that Mrs. Hammons' consent extended that far and that the closed container might be concealing drugs. *See Florida v. Jimeno*, 500 U.S. 248, 251-52 (1991) (general consent to search car included consent to search containers within that car which might bear drugs); *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990) (Fourth Amendment requires that factual determinations about authority to search be reasonable, not that they always be correct); *United States v. Sanchez*, 32 F.3d 1330, 1333-36 (8th Cir. 1994) (discussing *Jimeno* and *Rodriguez*), *cert. denied*, 513 U.S. 1158 (1995).

Because the "closed container" in this case is the garment bag, the issue is whether it was objectively reasonable for the officer to believe that Mrs. Hammons' consent to search extended to the garment bag. The defendant argues that because the garment bag had airline identification tags on it, clearly indicating that it belonged to Mr. Hammons, it was unreasonable for the officer to believe that Mrs.

6

Hammons owned the bag. In addition, the officer saw that there were men's clothes inside of the garment bag, so the defendant argues that it was all the more unreasonable for the officer to believe that the bag belonged to Mrs. Hammons or that she had authority to consent to its search. The government counters these assertions by stating that the officer did not realize that it was Mr. Hammons' bag until he had already opened it and searched through it.

The first question we must examine is whether it was objectively reasonable for the officer to believe that the garment bag belonged to Mrs. Hammons. If such a belief was reasonable, then it was also reasonable for the officer to believe that Mrs. Hammons had authority to consent to the search of that bag. *See Rodriguez,* 497 U.S. at 185-86; *Sanchez*, 32 F.3d at 1334-35. We review the facts supporting the district court's decision for clear error, mindful that "[w]hen applying this standard, we give deference to the fact finder, who had an opportunity to observe the demeanor and credibility of the witnesses." *Cunningham*, 133 F.3d at 1072.

The district court found that when the officer opened the trunk and felt the garment bag, the officer did not see the airline identification tag revealing that the bag belonged to the defendant. The district court also found that the officer did not guess that it was the defendant's bag until after the officer had already opened it, begun searching through it, and discovered men's clothing inside of it. The district court had the best opportunity to observe the officer's credibility in making these factual determinations, and nothing in the record persuades us that these findings were clearly erroneous. The initial search of the garment bag was therefore lawful because when the officer opened the bag and began to search through it, he did so

with an objectively reasonable belief that the garment bag belonged to Mrs. Hammons, and that she had given her consent to the officer's searching through it.

## B. Opening the Envelope

The more difficult question is whether the action of opening the manila envelope found inside the garment bag violated Mr. Hammons' Fourth Amendment right against unreasonable searches and seizures. By the time the officer was ready to open the envelope, the officer knew that the defendant owned the garment bag in which the envelope was found because the defendant had admitted to the officer that he did. With this knowledge, the officer could not reasonably believe that Mrs. Hammons' consent to search the car extended to the envelope. The officer needed to obtain the defendant's consent to open the envelope—which the officer did obtain—but the district court found that the defendant did not consent voluntarily. *See Michigan v. Mosley*, 423 U.S. 96, 103 n.9 (1975) (right to remain silent must be scrupulously honored before questioning is resumed); *United States v. Cody*, 114 F.3d 772, 775 (8th Cir. 1997) (citing *Mosley*).

The issue thus boils down to the district court's conclusion that despite the police misconduct in opening the envelope after obtaining involuntary consent, the cocaine found inside the envelope was admissible because the officer would have inevitably discovered the cocaine if the police misconduct had not occurred. The factual findings made in support of this determination were as follows:

> As he had indicated he would, Sgt. Moore requested the services of a drug-trained canine unit, which later joined the investigation. Without reasonable doubt the trained dog would likely have discovered the cocaine hidden in

8

the envelope and the defendant would nevertheless have been lawfully arrested.

In addition to these findings, the district court noted that the drug dog later joined the group while they were en route to the police station, although no evidence was adduced that the dog ever examined the envelope. The court found that if the dog would have sniffed the envelope, it would have alerted on it, and the officer would have inevitably discovered the cocaine.

Based on the district court's factual findings, a reasonable view of the evidence is that the officer called the drug dog after the officer had opened the envelope: when the officer was talking with Hammons and trying to obtain his consent to open the envelope, the officer told Hammons that "he believed that the envelope possibly contained contraband and that he would request a drug canine to come to the scene and sniff the search package."[3] The officer and Hammons continued talking until Hammons gave his involuntary consent, at which point the officer opened the envelope. The district court then applied these facts to the holding of *Nix v. Williams*, 467 U.S. 431, 446-47 (1984), to find that because the officer would have called a drug dog and the dog would have alerted on the envelope, the government would have acquired the contents of the envelope lawfully and inevitably.

---

[3] Because the officer stated that he "would" request a drug dog, rather than he "had" requested a drug dog, we assume that the drug dog was not called until after the envelope had been opened. *See United States v. Bloomfield*, 40 F.3d 910, 914 (8th Cir. 1994) (en banc) (applying the "reasonable view of the evidence" test to the district court's decision to deny a motion to suppress), *cert. denied*, 514 U.S. 1113 (1995).

9

To decide whether the cocaine inside the envelope would have been inevitably discovered, this Court must not only examine whether there was a reasonable probability that the evidence would have been discovered by lawful means if the police misconduct had not occurred, but it must also examine whether the government was pursuing a substantial, alternative line of investigation at the time of the police misconduct. *See Nix,* 467 U.S. at 449; *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997). In *Nix*, a ten-year-old girl was murdered and the police coerced the defendant into leading them to the girl's body. *Id.* at 436. Before the police misconduct occurred, the Iowa Bureau of Criminal Investigation had already initiated a large-scale search of the area where they believed the girl's body would be found. *Id.* at 435. The area had been separated into quadrants and volunteers were systematically searching those quadrants. *Id.* Although the search had been called off before the body was found, *id.* at 436, the Supreme Court determined that the search would have resumed had the defendant not led the police to the body. *Id.* at 449-50. Because the body was found "essentially within the area to be searched," *id.* at 436, the Supreme Court determined that the body would have inevitably been discovered without any reference to the police misconduct. *Id.* at 450.

Following the holding in *Nix*, this Court noted in *Conner* that "[t]o succeed under the inevitable-discovery exception to the exclusionary rule, the government must prove by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a

10

substantial, alternative line of investigation at the time of the constitutional violation."[4] *Conner*, 127 F.3d at 667; *see also United States v. Halls,* 40 F.3d 275, 276-77 (8th Cir. 1994) (applying inevitable discovery doctrine because the evidence showed that an alternative line of investigation existed prior to the misconduct), *cert. denied*, 514 U.S. 1076 (1995); *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir. 1990) (same).

The first prong of this analysis is easily satisfied in this case. The district court did not clearly err in finding that had the defendant not consented to the search, the officer would have called a drug-canine unit, the drug dog would have alerted on the envelope, and the drugs would have been found through lawful means. *See United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir. 1994) (en banc) (drug dog's identification of drugs in luggage provides probable cause that drugs are present), *cert. denied*, 514 U.S. 1113 (1995). While the first prong is easily met, the second prong poses a closer question.

The second prong of the analysis is whether the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation. In this case, the officer did not actually call the drug-canine

---

[4] The circuits appear to be split on the issue of whether it is necessary that the separate investigation be ongoing at the time of the police misconduct. For example, the Tenth Circuit has held that the inevitable discovery exception applies "whenever an independent investigation inevitably would have led to discovery of the evidence, whether or not the investigation was ongoing at the time of the illegal police conduct." *United States v. Larsen*, 127 F.3d 984, 986 (10th Cir. 1997), *cert. denied*, –U.S.–, 118 S.Ct. 1105 (Feb. 23, 1998); *see also United States v. Warren,* 997 F.Supp. 1188, 1193-94 (E.D.Wis. 1998) (noting circuit split).

unit before the misconduct occurred, but the officer did tell Hammons that he would call a drug-canine unit if Hammons did not consent to the search. The officer's assertion that he would call a drug dog indicates that the officer had initiated an alternative plan at the time of the constitutional violation: if Hammons did not consent, the officer was prepared to walk back to his patrol car and radio the drug-canine unit.

In short, the only event that stopped the officer from calling the drug-canine unit before the officer opened the envelope was the defendant's consent. Similarly, the only event that stopped the *Nix* search team from resuming its search was the defendant's coerced agreement to lead the police to the body. We therefore find that a substantial, alternative line of investigation was underway which would have led to the inevitable discovery of the cocaine absent the police misconduct.

## III. Conclusion

The officer was operating under an objectively reasonable belief that he had consent to open the garment bag, and the officer would have inevitably discovered the cocaine inside the envelope in that garment bag through a substantial, alternative line of investigation that was underway prior to the police misconduct. We therefore affirm the district court's denial of the defendant's motion to suppress the cocaine.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.