MURPHY, Circuit Judge.
Douglas Alan Reeves was arrested, without a warrant, when he answered his motel door at 3:30 am. Reeves answered the door only after officers made phone calls to his room, knocked on his door and window with flashlights, and loudly identified themselves as police officers over the course of at least twenty minutes. Subsequent to his arrest, weapons and ammunition were found in his room and on his person. Reeves entered a conditional guilty plea to one count of Felon in Possession of a Firearm and one count of Felon in Possession of Ammunition. 18 U.S.C. §§ 922(g)(1), 924(a)(2). The plea agreement preserved his right to appeal the district court’s denial of his motion to suppress evidence of the weapons, premised on a violation of the Fourth Amendment. This court has jurisdiction pursuant to 28 U.S.C. § 1291. Because we hold Reeves was seized inside his room without a warrant in violation of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and, because the government has not demonstrated that Reeves’ subsequent consents to search were not tainted by the unlawful seizure, we REVERSE the district court’s denial of Reeves’ motion to suppress.
I.
This court reviews a district court’s ruling on a motion to suppress by considering the evidence in the light most favorable to the prevailing party, here the government. United States v. Cheromiah, *1164 455 F.3d 1216, 1220 (10th Cir.2006). The facts, therefore, taken in the light most favorable to the government are as follows.
On March 13, 2005, at 9:30 pm Carbon County Sheriffs Office deputies and Baggs, Wyoming police officers responded to an aggravated assault call. During the investigation, an EMT who treated the victim and who also worked as a clerk in a liquor store, informed officers she heard Reeves make a comment earlier the same day at the liquor store that “sometimes you gotta do what you gotta do and God tells you to do it.” This statement was substantially similar to a statement the assault victim heard her assailant make. As a result, Reeves became a suspect in the assault investigation. Reeves was also known to the officers to be a felon and they had received reports from citizens that he- was in possession of a handgun.
At 2:43 am, Baggs Chief of Police Mark Lapinskas, Carbon County Sheriffs Sergeant Michael Morris, Deputy Edward Fourman, and Deputy Dave Fagnant arrived at the Country Inn Motel, where Reeves was known to have been living for three months. Deputy Fourman and Sergeant Morris requested the manager call Reeves and ask him to step outside. The manager made multiple calls to Reeves’ room, but there was no response. During this time, Chief Lapinskas and Deputy Fagnant kept watch on Reeves’ room. After receiving no response to the phone calls, Chief Lapinskas, Deputy Fourman, and Sergeant Morris approached the motel room and Deputy Fagnant went to the back of the motel to watch the rear exit.
Outside Reeves’ motel room, the officers commenced knocking on the door and window, using their police-issued black metal flashlights. The officers knocked consistently for at least twenty minutes while yelling and identifying themselves as police officers.[1] Deputy Fourman testified the officers “banged on the window very loudly with [their] flashlights.” R. Vol. 3 at 10. During this time period, Reeves did not come to the door or otherwise acknowledge the officers’ presence. After approximately twenty minutes of banging and yelling, Reeves came to the motel room door.
Chief Lapinskas testified that Reeves opened the door and stepped out of the room. As Reeves exited, the officers observed he wore a holster. The officers testified that they could not, however, determine whether the holster held a gun. Chief Lapinskas ordered Reeves to show his hands, withdrew his taser, and aimed its target light at Reeves. Reeves complied and was taken into custody. When patted down, five .44 caliber rounds were found in his pocket. Chief Lapinskas performed a protective sweep of the motel room, observing a revolver lying on the floor, two rifles in an open closet, and boxes of ammunition on a storage shelf. The revolver was in plain view to the officers located outside the room.
The officers read Reeves his Miranda rights and requested consent to search the *1165 room. Reeves initially consented, but quickly withdrew his consent and the officers ceased the search. Before the officers withdrew from the room, however, the revolver on the floor was seized. Reeves was taken to the Baggs Town Hall at approximately 3:50 am and interviewed about the assault. He denied involvement and volunteered to submit to testing. The interview lasted about one hour. Reeves was then transported seventy-five miles from Baggs to Rawlins where he was taken to the hospital to submit to a sexual assault kit. He remained at the hospital from 6:30 am to 8:00 am. Reeves was then transported to the Sheriffs Office in Raw-lins and the officers resumed the interview that began at the Baggs Town Hall. The officers again requested permission to search Reeves’ motel room. At 8:20 am, Reeves signed a form granting permission to search the room. The search of the motel room produced two long-barreled rifles and one .22 caliber handgun. Reeves was tried on the sexual assault charges and the trial ended in a hung jury. He was subsequently transferred from state to federal custody to face federal firearm charges.
II.
On appeal, Reeves argues he was arrested inside his home in violation of the Fourth Amendment and that the evidence subsequently obtained was tainted and should be suppressed.[2] He claims he only opened his door as a result of coercive police conduct and this coercion effectuated an arrest inside his home at the moment he opened his door. Because this was a routine felony arrest and there were no exigent circumstances, he argues, the subsequent search of his room was barred by the Fourth Amendment.
In reviewing the district court’s denial of a motion to suppress, this court considers the evidence in the light most favorable to the government. Cheromiah, 455 F.3d at 1220. This court must accept the district court’s factual findings unless those findings are clearly erroneous. United States v. McKissick, 204 F.3d 1282, 1296 (10th Cir.2000). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law reviewed de novo. Id.
In Payton v. New York, the Supreme Court held that, absent exigent circumstances, police officers may not enter an individual’s home without consent to make a warrantless routine felony arrest even if probable cause to arrest the individual exists. 445 U.S. at 576, 100 S.Ct. 1371. Payton held “the Fourth Amendment has drawn a firm line at the entrance to the house.” Id.; see also Kirk v. Louisiana, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (per curiam). That line can be breached by conduct other than physical entry. This court has held that officers need not physically enter the home for Payton to apply. United States v. Maez, 872 F.2d 1444, 1451 (10th Cir.1989). Rather, “it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home.” Id. (quotation omitted). As a result, although the officers were positioned outside the motel room, Reeves was inside his room at the time he opened his door and we analyze this encounter as occurring within his home.
*1166 Encounters between police officers and citizens generally can be categorized as arrests, investigatory stops, or consensual encounters. United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir.1996). Consensual encounters do not implicate the Fourth Amendment.[3] Id. Both arrests and investigatory stops, however, are seizures under the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 16-19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Pay-ton’s protections apply to all Fourth Amendment seizures of persons inside their homes.[4] 445 U.S. at 590, 100 S.Ct. 1371 (“In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.” (emphasis added)); Kirk, 536 U.S. at 638, 122 S.Ct. 2458 (“[PJolice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home.”). As a result, labeling an encounter in the home as either an investigatory stop or an arrest is meaningless because Payton’s requirements apply to all seizures.[5] United *1167 States v. Saari, 272 F.3d 804, 809 (6th Cir.2001).
That Payton applies to all warrantless seizures in the home is the only logical outcome. If we were to hold otherwise, it would allow a seizure in the home when only reasonable suspicion exists, yet prohibit a seizure in the home when an officer has probable cause to arrest, but no exigent circumstances. It cannot be the case that Payton’s, “firm line at the entrance to the house” offers less protection to individuals for whom probable cause to arrest does not exist. 445 U.S. at 576, 100 S.Ct. 1371.

A.

We first consider whether Reeves was seized inside his room and opened the door as a result of coercive police conduct. “[A] person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). In situations where the individual could not or would not wish to leave, even absent the police presence, “the appropriate inquiry is whether a reasonable person would feel free to decline the officers’ requests or otherwise terminate the encounter.” Florida v. Bostick, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Circumstances that indicate a seizure include, “the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.”[6] Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870; Maez, 872 F.2d at 1450.
Opening the door to one’s home is not voluntary if ordered to do so under color of authority. In Maez, the defendant was a suspect in a bank robbery. 872 F.2d at 1446. The police planned Maez’s arrest over the course of at least three hours, but did not obtain a warrant. Id. at 1446^17. Ten officers, including a SWAT team, surrounded Maez’s home and, with rifles pointed at the trailer, asked the occupants to come out one at a time over loudspeakers. Id. at 1447, 1449-50. The occupants complied and Maez was taken into custody. Id. at 1450. This court concluded “Payton is violated where there is such a show of force that a defendant comes out of a home under coercion and submits to being taken in custody.” Id. at 1451; see also United States v. Al-Azzawy, 784 F.2d 890, 893 (9th Cir.1985) (holding defendant was seized inside his home when officers surrounded his trailer and ordered him *1168 through a bullhorn to leave the trailer and drop to his knees); United States v. Morgan, 743 F.2d 1158, 1163-64 (6th Cir.1984) (holding the police seized the defendant inside his home when the defendant was ordered out of his home with his hands up).
Further, this court has held that if an individual’s decision to open the door to his home to the police is not made voluntarily, the individual is seized inside his home. United States v. Flowers, 336 F.3d 1222, 1226 n. 2 (10th Cir.2003) (“[W]e hold that Flowers’ decision to open his door was not voluntary and he was arrested while in his home.”). In Flowers, the officers suspected the defendant was selling liquor illegally. Id. at 1223. After knocking on the door of the defendant’s home and inquiring if they could purchase alcohol, the officers were offered wine through a hole in the wall of the home. Id. at 1224. The officers told the defendant, “in a firm tone of voice, ‘Tulsa Police Department, open the door.’ ” Id. We concluded “a reasonable person confronted by police officers outside his door at night and a command by one of the officers to allow them to enter, would have believed that he had to open the door of his home and submit to the show of authority.” Id. at 1226 n. 2.
In United States v. Jerez, the Seventh Circuit held that when officers knocked on a motel room door for three minutes, identified themselves as officers, asked the occupants to open the door, knocked on the window for one-and-a-half to two minutes, and shined a flashlight into the window, the subsequent opening of the door by the defendant was a submission to a show of authority and a seizure within the meaning of the Fourth Amendment. 108 F.3d 684, 691-93 (7th Cir.1997). It concluded,
The three minutes of silence by Room 161’s occupants, when combined with the other circumstances of this case, especially the lateness of the hour, amounted to a refusal by Mr. Jerez and Mr. Solis to answer the door. Once the officers had been refused admittance, their continued efforts to rouse the occupants out of bed certainly prevented them from ignoring the continued requests and from maintaining the privacy and solitude of their dwelling.
Id. at 691-92 (footnote omitted); see also United States v. Conner, 127 F.3d 663, 665-66 (8th Cir.1997) (holding when four officers knocked on the defendants’ motel door three times, identified themselves as police, and demanded the defendant “open up,” the defendants did not voluntarily consent to the entry). The Sixth Circuit determined a seizure occurred when,
the officers positioned themselves in front of the only exit from Defendant’s apartment with their guns drawn. They knocked forcefully on the door and announced that they were the police. Upon opening the door, Defendant was instructed to come outside, which he did. Under these circumstances, a reasonable person would have believed that he was not free to leave.
Saari, 272 F.3d at 808; see also, United States v. Mowatt, 513 F.3d 395, 400 (4th Cir.2008) (holding the defendant’s acquiescence to demands to open his door constituted a search).
The officers’ conduct outside Reeves’ motel room would lead a reasonable person to believe he was not free to ignore the officers. See Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870; Bostick, 501 U.S. at 436, 111 S.Ct. 2382. Although there is no evidence the officers gave Reeves a direct order to open his door, the officers’ actions were effectively a command to open the door. The record demonstrates that three officers pounded on Reeves’ door and window while yelling and loudly identifying themselves as police officers. They contin *1169 ued this conduct consistently for at least twenty minutes. This encounter began between 2:30 and 3:00 in the morning, a time which must be taken into consideration when analyzing the coerciveness of the encounter. Flowers, 336 F.3d at 1226 n. 2; see also Jerez, 108 F.3d at 690.[7] A reasonable person faced with several police officers consistently knocking and yelling at their door for twenty minutes in the early morning hours would not feel free to ignore the officers’ implicit command to open the door. Bostick, 501 U.S. at 435, 111 S.Ct. 2382. As a result, when Reeves answered his door he did so in response to a show of authority by the officers and he was seized inside his home. See Maez, 872 F.2d at 1450.

B.

We next turn to the question of whether Reeves’ arrest inside his home was justified by probable cause and exigent circumstances. Officers may enter an individual’s home without consent and conduct a warrantless arrest if both probable cause and exigent circumstances exist. Payton, 445 U.S. at 590, 100 S.Ct. 1371. Exceptions to the warrant requirement, however, are “few in number and carefully delineated.” Welsh v. Wisconsin, 466 U.S. 740, 749, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (quotation omitted). The government bears the burden of establishing that exigent circumstances made the warrant-less entry necessary. United States v. Cuaron, 700 F.2d 582, 586 (10th Cir.1983). In determining whether the government has met its burden, we “evaluate the circumstances as they would have appeared to prudent, cautious, and trained officers.” United States v. Anderson, 154 F.3d 1225, 1233 (10th Cir.1998). Here, even assuming the officers had probable cause to arrest Reeves, no exigent circumstances existed to permit the officers to enter Reeves’ room.
The district court found that the officers had to act because Reeves was a felon and they had knowledge he was leaving immediately for California. The district court’s finding that the officers knew of Reeves’ travel plans at the time they took him into custody is clearly erroneous. The undisputed testimony of Deputy Fourman at the suppression hearing was that he learned of Reeves’ possible travel to California from the motel manager after Reeves had already been handcuffed and taken into custody. There was no evidence presented that the officers knew of Reeves’ travel plans before they seized him. As a result, this information could not support a conclusion that exigent circumstances existed at the time the officers approached Reeves’ room.
The government argues exigent circumstances were supported by officer and victim safety. To demonstrate that officer or victim safety justifies a warrantless entry, the government must show, “(1) the officers had an objectively reasonable basis to believe that there was an immediate need to enter to protect the safety of themselves or others, and (2) the conduct of the entry was reasonable.” United States v. Walker, 474 F.3d 1249, 1253 (10th Cir.2007).
*1170 The government points to Reeves’ appearance in his doorway and the officers’ reasonable belief that the holster he wore could contain a handgun. This event, however, occurred only after Reeves had submitted to the officers’ show of authority and was seized. A factor that develops post-seizure cannot be used to justify exigency. See Mowatt, 513 F.3d at 399. The government has pointed to no evidence that could support exigency at the time Reeves was seized.[8] As a consequence, no exigent circumstances existed to provide an exception to the warrant requirement.

C.

Finally, we consider whether Reeves’ unlawful arrest rendered his subsequent consents to the search of his room invalid and the evidence gathered in the search inadmissible. See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Reeves claims the evidence seized from his room was tainted by the unlawful seizure and should be excluded. When a consensual search is preceded by an unlawful arrest, the government must prove the consent was given voluntarily. It must also “establish a break in the causal connection between the illegality and the evidence thereby obtained.” United States v. Melendez-Garcia, 28 F.3d 1046, 1053 (10th Cir.1994) (quotation omitted).
The district court concluded that Reeves’ consent was voluntary, but did not reach the issue of taint. Whether the taint of an illegal arrest has dissipated is analyzed under the factors articulated in Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975): “1) the temporal proximity between the police illegality and the consent to search; 2) the presence of intervening circumstances; and particularly 3) the purpose and flagrancy of the official misconduct.” Melendez-Garcia, 28 F.3d at 1054.
The government argues the district court’s determination that Reeves’ consent was voluntary is not clearly erroneous. It does not, however, attempt to demonstrate a break in the causal connection between the unlawful arrest and the consent. This court’s case law makes clear that the government bears the burden of demonstrating both voluntariness and a break in the causal connection. Id. Although the tests do overlap to some extent, evidence obtained by consent after an unlawful seizure should be admitted “only if it is demonstrated that the consent was both voluntary and not an exploitation of the prior illegality.” Id. at 1054-55 (quotation omitted). ‘We require the government to demonstrate that any taint of an illegal search or seizure has been purged or attenuated not only because we are concerned that the illegal seizure may affect the voluntariness of the defendant’s consent, but also to effectuate the purposes of the exclusionary rule.” Id. at 1054.
Although the district court did not address the taint issue, the government has not asked this court to remand this case to the district court for additional fact finding. Nor has the government argued that facts bearing on the question of attenuation are in dispute. The government has completely failed to address whether there was a break in the causal relationship between the unlawful arrest and the subsequent search.[9] Because the government *1171 has failed to identify anything in the record demonstrating in any way that the taint from the unlawful seizure was purged or attenuated before Reeves gave consent to search his motel room, this court cannot say the causal connection between the illegality and the consent was broken.
III.
Because Reeves was seized inside his home in violation of Payton’s warrant requirement and because the government has failed to demonstrate that the taint of the unlawful seizure had dissipated prior to obtaining Reeves’ consent to search his room, the district court’s denial of the motion to suppress is REVERSED.

. The district court made no findings regarding the length of time the officers knocked on Reeves’ door. Although we consider the facts in the light most favorable to the government, we note that the time spent knocking was most likely more than twenty minutes. Relying on his incident report which was prepared a few days after the incident, Deputy Fourman testified that the officers arrived at the Country Inn Motel at 2:43 am and Reeves exited his room after 3:30 am. When asked to allocate those approximately forty-live minutes, Fourman explained “[w]hen I first got there, I went to the manager’s so that probably took ten minutes at that point. It probably took another twenty minutes of knocking, consistent knocking, before he exited the room." R. Vol. 3, at 29. This leaves at least fifteen unaccounted minutes.

. The officers knew at the time of the incident that Reeves had been living at the Country Inn Motel for at least three months. There is no question Reeves’ motel room was his home for purposes of the Fourth Amendment. Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

. So-called "knock and talks” fall into this category of encounter. United States v. Cruz-Mendez, 467 F.3d 1260, 1264 (10th Cir.2006) ("[A] 'knock and talk’ is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion.”).

. The scenario in which an individual voluntarily opens his door to the police and is subsequently seized while still inside his home, is not before us and we express no opinion on such a situation. Cases analyzing such scenarios, therefore, are not relevant to the analysis of this appeal, where the question is only whether Reeves voluntarily opened his door. Accordingly, the concurrence’s reliance on such cases is misplaced. See United States v. Barker, 437 F.3d 787, 790 (8th Cir.2006) (concluding a reasonableness standard may apply when officers "requested” a defendant step outside his room, as opposed to issuing a "command”); United States v. Beaudoin, 362 F.3d 60, 67-69 (1st Cir.2004) ("The police did not order Beaudoin out of the doorway until he had voluntarily opened the door and spoken with them.”), vacated on other grounds sub nom. Champagne v. United States, 543 U.S. 1102, 125 S.Ct. 1025, 160 L.Ed.2d 1009 (2005); United States v. Gori, 230 F.3d 44, 51-55 (2d Cir.2000) (holding the defendant voluntarily opened his door and no longer had an expectation of privacy in the entrance area); United States v. Portillo-Portillo, No. 07-2070, 267 Fed.Appx. 760, 763, 2008 WL 538487, at * 3 (10th Cir. Feb.28, 2008) (unpublished) (applying an investigatory stop analysis to defendants who voluntarily opened the door to police). United States v. Taylor is even less relevant. 90 F.3d 903, 908 (4th Cir.1996) (holding officers did not conduct a search by looking into an open window because there was no expectation of privacy in the area and the items seen through the window provided the officers with probable cause and exigent circumstances to enter the home).

.The concurrence is correct in noting that one other circuit has applied the investigatory stop framework to a non-consensual encounter in a home with a closed door. See United States v. Jerez, 108 F.3d 684, 691-93 (7th Cir.1997). Our circuit and several others, however, have correctly applied Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), to such encounters. United States v. Flowers, 336 F.3d 1222, 1227 (10th Cir.2003); United States v. Maez, 872 F.2d 1444, 1451 (10th Cir.1989); see also United States v. Mowatt, 513 F.3d 395, 399-400 (4th Cir.2008) ("It is well established that a search occurs for Fourth Amendment purposes 'when officers gain visual or physical access to a ... room after an occupant opens the door not voluntarily, but in response to a demand under color of authority.’ ”) (quoting United States v. Cornier, 127 F.3d 663, 666 (8th Cir.1997)); United States v. Saari, 272 F.3d 804, 809 (6th Cir.2001) ("Paytons holding that warrantless seizures of persons in their homes violate the Fourth Amendment, absent exigent circumstances, applies to this case regardless of whether the officers at issue were conducting an arrest or an investigatory detention.”); Conner, 127 F.3d at 666 n. 3 ("Our analysis of the entry of the motel *1167 room under Payton necessarily rejects the government’s argument that we should assess the police officers’ command to open the door under a reasonableness standard.”); United States v. Johnson, 626 F.2d 753, 757 (9th Cir.1980) (applying Payton to the seizure of an individual who opened his door when agents misrepresented their identities).

. The concurrence seems to believe that cases in which officers seize an individual inside his home, but do not cross the threshold themselves (what it calls "constructive entry” cases) are subject to a different seizure standard. Concurrence at 1171. Under its theory, police conduct in such cases must be "excessively coercive” to violate Payton. Id. As explained above, however, it is the location of the defendant, not the officer, which governs whether the heightened Fourth Amendment protections of the home apply. Thus, so called "constructive entry” cases and regular entry cases are analytically indistinguishable for purposes of examining whether a seizure occurred. Furthermore, such an approach is not supported by this court's precedent. Flowers, 336 F.3d at 1226 n. 2; Maez, 872 F.2d at 1450.

. The Seventh Circuit placed significant emphasis on the late hour of an encounter. The court stated:
Because our law and legal traditions long have recognized the special vulnerability of those awakened in the night by a police intrusion at their dwelling place, our Fourth Amendment jurisprudence counsels that, when a knock at the door comes in the dead of night, the nature and effect of the intrusion into the privacy of the dwelling place must be examined with the greatest of caution.
Jerez, 108 F.3d at 690.

. The government makes references to victim and public safety in its brief, but fails to make any argument as to how these considerations could support exigency. We note the record is devoid of any mention of a victim or mem-her of the public whose safety may have been at risk during this encounter.

. A review of the record did not reveal any obvious evidence of attenuation.