**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 10, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSHUA HERNANDEZ-
CHAPARRO,

    Defendant-Appellant.

No. 09-2037

(D.C. No. 2:07-CR-02437-MV-1)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **BALDOCK,** and **HARTZ**, Circuit Judges.

---

Defendant Joshua Hernandez-Chaparro pled guilty to one count of illegally entering the United States after deportation in violation of 8 U.S.C. § 1326(a) and (b), reserving his right to appeal the district court's denial of his motion to suppress evidence of his identity. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

The parties are familiar with the facts, and therefore we discuss only briefly the facts related to Defendant's appeal. During the time to file pretrial motions, Defendant filed a motion to suppress evidence of his identity, arguing that it was obtained illegally as a result of a discriminatory investigation. Defendant claimed

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the law enforcement personnel involved improperly targeted Hispanics, including Defendant, in an attempt to discover illegal immigrants, enforce federal immigration laws, and thereby obtain money from a federal grant program called Stonegarden. The district court gave the parties ample opportunity to brief and orally argue the issue, even allowing the American Civil Liberties Union of New Mexico to file an amicus brief, and wrote a thorough and well-reasoned order denying Defendant's motion to suppress.

Defendant makes two arguments on appeal. He argues he was a victim of selective law enforcement in violation of the Equal Protection Clause and that he was detained in his house in violation of the Fourth Amendment. When we review the denial of a motion to suppress, "we accept the factual findings of the district court unless they are clearly erroneous. The ultimate determination of reasonableness under the Fourth Amendment is a question of law, which we review de novo." United States v. Albert, 579 F.3d 1188, 1193 (10th Cir. 2009). We address each of Defendant's arguments in turn.

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). Those seeking to establish an equal protection claim based on selective law enforcement face a high burden: they must dispel the presumption that a law enforcement official has not violated the Equal Protection Clause with "clear evidence to the contrary." United States v. Armstrong, 517 U.S. 456, 465 (1996).

2

Evidence that an officer's actions had a discriminatory effect and were motivated by a discriminatory purpose is necessary. Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1168 (10th Cir. 2003). Though the discriminatory purpose need not be the only purpose, it "must be a motivating factor in the decision." Villanueva v. Carere, 85 F.3d 481, 485 (10th Cir. 1996).

The district court thoroughly analyzed Defendant's equal protection argument and concluded Defendant failed to show discriminatory effect or purpose. The evidence clearly demonstrated that Captain Eduardo Medrano visited the house where Defendant resided to check on the welfare of children whose baby brother was a probable victim of child abuse. Medrano was unaware of Defendant's race when he arrived. After communicating with Deputy Kenneth Figueroa, who was with the victim and his mother, Medrano learned Defendant had given him a false name and was likely a deported felon. When Medrano asked Defendant about his identity, Defendant acknowledged his true name and explained he was a deported felon. Medrano then arrested Defendant for concealing his identity in violation of N.M. Stat. Ann. § 30-22-3. He later testified he arrested Defendant rather than merely issue him a citation because he had discretion to do so and wanted to be sure Defendant was available during the child abuse investigation. As the district court concluded, none of these facts reveal a discriminatory purpose or effect.

Defendant next claims he was detained in his home in violation of his Fourth Amendment rights. As the district court concluded, however, Defendant's entire pre-

3

arrest encounter with Medrano was consensual. "Consensual encounters do not implicate the Fourth Amendment." United States v. Reeves, 524 F.3d 1161, 1166 (10th Cir. 2008). A "seizure" occurs when an officer, "by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen." United States v. Zapata, 997 F.2d 751, 756 (10th Cir. 1993) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). A "knock and talk," on the other hand, "is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion." United States v. Cruz-Mendez, 467 F.2d 1260, 1264 (10th Cir. 2006).

In this case, Medrano knocked on Defendant's door slightly before 6 a.m., and Defendant answered. Medrano did not yell, declare he was a police officer, brandish a weapon or flashlight, or pound loudly on the door for a long period of time. See Reeves, 524 F.3d at 1163–1165. When Medrano explained he had come to check on the welfare of the two children in the residence, Defendant admitted him, and he talked with the children. The evidence does not indicate that this was anything other than a "knock and talk," and Defendant voluntarily responded to questions about his name and volunteered information about his status as a previously deported felon. See Cruz-Mendez, 467 F.3d at 1262–1265 (discussing a "knock and talk" and explaining its consensual nature). Given the totality of the circumstances, we agree with the district court that the encounter was consensual. See Zapata, 997 F.2d at 756–57.

Because Defendant provided no evidence of discriminatory effect or purpose, and because Medrano's encounter with Defendant was consensual, the district court did not err in denying Defendant's motion to suppress. AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge