FILED
United States Court of Appeals
Tenth Circuit

March 19, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CARLOS A. GAMEZ-ACUNA,

Defendant - Appellant.

No. 08-4091 & 08-4122

(D. Utah)

(D.C. No. 2:07-CR-00156-DAK-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY,** Chief Judge, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

## I.  INTRODUCTION

During a traffic stop, police officers discovered methamphetamine in a car

driven by Carlos Gamez-Acuna.  Gamez-Acuna was charged with possession with

intent to distribute fifty grams or more of methamphetamine, in violation of

21 U.S.C. § 841(a)(1), and illegal reentry by a previously deported alien, in

violation of 8 U.S.C. § 1326(a)(2).  He moved to suppress the methamphetamine,

arguing the search of his vehicle was not based on voluntary and intelligent

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

consent. After the district court denied the motion to suppress, the case proceeded to trial. A jury found Gamez-Acuna guilty of both the drug-possession and illegal-reentry charges. Gamez-Acuna appeals, challenging his convictions on the following four grounds: (1) the district court erred in finding he voluntarily consented to the search of his vehicle; (2) his § 841(a)(1) conviction is not supported by sufficient evidence; (3) the district court erred in refusing to sever the drug possession charge from the illegal reentry charge; and (4) trial counsel provided ineffective assistance. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

We dismiss without prejudice Gamez-Acuna's claim of ineffective assistance of trial counsel. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."). Gamez-Acuana's remaining claims of error are without merit. Accordingly, this court **affirms** his convictions.

## II. ANALYSIS

### A. Denial of Suppression Motion

#### 1. Background

In reviewing a district court's ruling on a motion to suppress, this court considers the evidence in the light most favorable to the prevailing party. *United*

*States v. Reeves*, 524 F.3d 1161, 1163-64 (10th Cir. 2008). The district court

denied Gamez-Acuna's motion to suppress, finding he freely and voluntarily

consented to the search of his car. The facts taken in the light most favorable to

the government are as follows.[1]

On February 4, 2007, a Utah Highway Patrol Trooper was on patrol in San

Juan County, Utah, when he stopped a white Nissan Sentra for speeding. The

entire stop was recorded by a video recording machine in the Trooper's vehicle.[2]

After the Nissan pulled over to the side of the road, the Trooper approached the

vehicle from the driver's side. He immediately observed a Nebraska temporary

tag affixed to the rear license plate holder. The Trooper initiated a conversation

with Gamez-Acuna. The Trooper spoke in English and Gamez-Acuna spoke in

both English and Spanish. As set out more fully below, Gamez-Acuna provided

relevant responses to the Trooper's questions and the Trooper understood what

Gamez said.

---

[1]In reviewing the denial of a motion to suppress, this court is "permitted to
consider evidence introduced at the suppression hearing, as well as any evidence
properly presented at trial." *United States v. Jones*, 523 F.3d 1235, 1239 (10th
Cir. 2008) (quotation omitted). Consistent with *Jones*, this background section
summarizes relevant evidence presented at both the suppression hearing and
Gamez-Acuna's trial.

[2]The video recording and a transcript of the verbal exchanges contained in
the recording were introduced at the suppression hearing and trial. Both the video
recording and the transcript are part of the record before this court on appeal.

Gamez-Acuna gave the Trooper a Mexican driver's license, a sales receipt for the Nissan, and the Nissan's insurance information.[3] The Trooper noticed Gamez-Acuna's hands were shaking uncontrollably; Gamez-Acuna was quite nervous and continued to shake throughout the entire encounter. The Trooper observed a cell phone on Gamez-Acuna's lap and another cell phone on the passenger seat. The Trooper testified at trial that in his training and experience, the presence of multiple cell phones was indicative of drug trafficking.

The Trooper asked Gamez-Acuna to exit his vehicle, accompany him back to the patrol vehicle, and sit in the front passenger seat of the patrol car. The video of the encounter shows that, consistent with the Trooper's directions, Gamez-Acuna went to the patrol vehicle and sat in the front passenger seat. Gamez-Acuna initiated a conversation with the Trooper regarding the speed limit, asking if the speed limit was forty miles per hour. The Trooper indicated the speed limit was thirty miles per hour and asked Gamez-Acuna about his driver's license and vehicle. The Trooper asked if Gamez-Acuna had a license from either Colorado or Arizona. Gamez-Acuna responded that he only had a Mexican driver's license, but that it was good for driving in Colorado. When Gamez-Acuna asked whether the Trooper was going to ticket him, the Trooper indicated

---

[3]The district court found that Gamez-Acuna "responded without question to [the Trooper's] request for documentation on the vehicle, license, and insurance by handing him a Mexico driver's license . . . , a sales receipt for the vehicle, and proof of insurance."

he had not yet decided and first wanted to "check some things out" before getting Gamez-Acuna "down the road."

The Trooper asked Gamez-Acuna to clarify where and when he purchased the Nissan. Consistent with the information on the sales receipt he previously gave the trooper, Gamez-Acuna indicated he purchased the vehicle approximately one month earlier in Nebraska for $2500.00.[4] Gamez-Acuna answered "no" when the Trooper asked if he had paid cash for the Nissan. Finally, for purposes of completing a warning citation, the trooper asked how many doors the Nissan had; Gamez-Acuna responded that the vehicle had four doors.

The Trooper then turned the conversation to Gamez-Acuna's travel plans. Gamez-Acuna stated he had recently moved from Nebraska to the Aspen/Basalt area. He further indicated he had left Aspen the previous night, had driven to Flagstaff, Arizona, to visit his mother, and was returning to Aspen because he had to work.[5] During this conversation, Gamez-Acuna was unable to tell the Trooper

---

[4]The Nebraska insurance certificate for the Nissan showed the policy took effect on January 10, 2007, the day after Gamez-Acuna purchased the vehicle, and was set to expire on February 10, 2007, less than a week after the instant traffic stop. The Trooper testified it is uncommon to see an insurance policy with a term of only one month.

[5]At trial, the Trooper explained why Gamez-Acuna's story regarding his travels was suspicious. The Trooper noted that the distance between Aspen and Flagstaff was approximately 550 miles and that it would take an average driver nine hours to make the trip one way. Gamez-Acuna's statement he had left the Aspen area the previous evening, coupled with the fact he was already halfway back to Aspen at 7:20 p.m. the next evening, meant he would have had very little

(continued...)

his mother's address or telephone number, stating he did not "know the [address] number" and did not "know the names for the streets." Likewise, Gamez-Acuna indicated he did not know his own address in Aspen/Basalt.

The Trooper also asked Gamez-Acuna a series of questions about his background and physical characteristics. In response to the Trooper's questions about his name and birth date, Gamez-Acuna stated his name was "Boby Conejo" and he was born on 12/04/1969. This information corresponded to the information on the driver's license Gamez-Acuna had previously provided to the Trooper. The Trooper also asked Gamez-Acuna his telephone number, place of birth, whether he had a social security number, his height and weight, mother's name, marital status, and the age and name of his son. The transcript of the exchange reveals that Gamez-Acuna understood the questions and was able to respond appropriately in English.

At this point, the Trooper gave Gamez-Acuna a warning citation and his documents and told him he was free to go.[6] After Gamez-Acuna exited the patrol

_____

[5](...continued)
time to visit with his mother. Instead, according to the Trooper, the trip fit the profile of a narcotics trafficker in that Gamez-Acuna traveled to Flagstaff, "a known drug area," and quickly turned around and was headed home.

[6]The transcript of this part of the encounter reads as follows:
       Trooper: Alrighty man, here's the paperwork on your vehicle, ah, your Mexico driver's license, ah this is just a . . . .
          Gamez-Acuna: A ticket?
          Trooper: No, no ticket. Written warning.
                        (continued...)

car with his documents, the Trooper approached him again and reinitiated conversation.[7] The Trooper asked Gamez-Acuna if he could ask him some additional questions. When Gamez-Acuna said "Yeah. Okay," the Trooper asked him if he was engaged in any illegal activity. Gamez-Acuna answered no, and the Trooper proceeded to ask permission to search the Nissan:

> Trooper: Can I search the car?
> Gamez-Acuna: Yeah.
> Trooper: Is that okay with you?
> Gamez-Acuna: Okay.

---

[6](...continued)
> Gamez-Acuna: Okay.
> Trooper: Okay. Just a written warning. No you don't have to pay. Okay?
> Gamez-Acuna: Okay.
> Trooper: You need to slow down and just be more observant when you come into town.
> Gamez-Acuna: Okay.
> Trooper: And when you're leaving town, just make sure you follow the speed limit sign. Okay?
> Gamez-Acuna: Okay.
> Trooper: Okay, you're free to go. Drive careful. Have a good evening, okay?
> Gamez-Acuna: Okay, thanks.

[7]As noted by the district court in its order denying Gamez-Acuna's motion to suppress, the Trooper had noted multiple indicators, which considered together, made him suspicious Gamez-Acuna was involved in illegal activity. These included, inter alia, the following: (1) Gamez-Acuna was traveling on State Road 191, a well-known drug corridor; (2) the Nissan fit the profile of a vehicle used for drug trafficking in that it was newly purchased with temporary tags, thus avoiding frequent trips smuggling drugs in the same vehicle; (3) Gamez-Acuna was exceedingly nervous for the entire duration of the stop; (4) multiple cell phones were present in the Nissan; (5) Gamez-Acuna's story of travel plans was very unlikely, especially given the time-line and his inability to identify his mother's address in Arizona.

Trooper: Comprende?  You understand what I'm saying?
Gamez-Acuna: A little bit.
Trooper: Can I search your car?  Is that okay?
Gamez-Acuna: Okay.
Trooper: Me go through and search it, okay?
Gamez-Acuna: I guess so.
Trooper: Is that okay with you?
Gamez-Acuna: That's okay.
Trooper: No problem?
Gamez-Acuna: No problem.

The video recording of the encounter shows Gamez-Acuna repeatedly nodding and answering the questions without hesitation.  At trial, the Trooper testified he believed Gamez-Acuna understood he was consenting to a search of the Nissan.

During a search of the Nissan, the Trooper became suspicious there were drugs in the spare tire.  The Trooper advised Gamez-Acuna he wanted to cut the tire open to examine its contents; Gamez-Acuna's responded "okay, no problem." The Trooper cut the spare tire open and discovered a package that contained 769.1 grams of methamphetamine.  At trial, the Trooper testified Gamez-Acuna did not look surprised when he observed the drugs in the tire; instead, he simply stated the spare tire was in the Nissan when he purchased it.  At booking, Gamez-Acuna disclosed to the Trooper in English that his real name was Carlos Gamez-Acuna and his actual date of birth was April 12, 1969.  Gamez-Acuna further stated he had an Arizona driver's license and recited the license number from memory.

Prior to trial, Gamez-Acuna filed a motion to suppress the evidence found during the search of the Nissan. He argued his consent to search was invalid because he did not speak enough English to understand the Trooper's requests to search. In response, the government argued the evidence relating to the traffic stop showed Gamez-Acuna understood enough English to freely and intelligently consent to the search. At a hearing on the suppression motion, the government called the Trooper as its sole witness and introduced the recording and transcript of the stop. Gamez-Acuna called a certified Spanish interpreter as his sole witness. The interpreter testified that, based on his review of the recording of the traffic stop, he believed Gamez-Acuna possessed a novice level ability to speak and understand English. The interpreter qualified his opinion as "provisional," however, because he did not conduct an in-person interview to determine Gamez-Acuna's English language skills.

The district court denied Gamez-Acuna's suppression motion, finding as follows:

> [T]he government has met its burden of proving valid consent. First, the evidence revealed that [Gamez-Acuna] understood and was responsive to [the Trooper's] statements and questions in English throughout the sixteen and one-half minute traffic stop. The conversation ranged from topics about the speeding violation and information about the Nissan, to topics including [Gamez-Acuna's] documents, family, personal information, personal characteristics, and travel plans. When [Gamez-Acuna] was confused or did not hear the [Trooper], he had no difficulty expressing his confusion by asking for clarification, repeating a part of the question, or declaring "I don't understand, a little bit for English." At those times, [the

Trooper] followed-up by rephrasing or clarifying his statements or questions until he was satisfied that [Gamez-Acuna] had understood him and that he had understood [Gamez-Acuna].

After the initial detention ended, and the encounter became consensual, [the Trooper] asked [Gamez-Acuna] seven times for permission to search the Nissan, asking, "Can I search the car?," "Is that okay with you?," "Comprende?," "Can I search your car? Is that okay?," "Me go through and search it, okay?," "Is that okay with you?," "No problem?" and each time, [Gamez-Acuna] responded positively. Given the totality of the circumstances surrounding the encounter between [the Trooper] and [Gamez-Acuna], it is clear that [Gamez-Acuna] understood [the Trooper's] requests. [Gamez-Acuna] did not appear confused, and indicated he understood what the trooper was requesting. [Gamez-Acuna] did not repeat [the Trooper's] requests or hesitate, but rather answered affirmatively each time. [Gamez-Acuna] understood [the Trooper's] requests and gave unequivocal, specific, free, and intelligent consent for him to search the Nissan.

Further, [Gamez-Acuna] did not express any surprise when [the Trooper] approached the Nissan and began his search, and he did not object to the search. Accordingly, although the language barrier rendered the situation less than ideal, when considered under the totality of the circumstances, the evidence is sufficient to find that the government has met its burden to show that [Gamez-Acuna's] consent was unequivocal, specific and intelligently given.

Dist. Court Order at 9-11 (citations omitted).

## 2. Discussion

"[W]arrantless searches violate the Fourth Amendment unless they fall within a specific exception to the warrant requirement." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001). Voluntary consent is a well-recognized exception to the Fourth Amendment's warrant requirement. *Id.* ("[T]his court has . . . held . . . a vehicle may be searched if a person in control of

the vehicle has given his voluntary consent to the search.").  Whether consent was voluntary is determined by the totality of the circumstances, utilizing the following two-part test: "First, the government must proffer clear and positive testimony that consent was unequivocal and specific and freely given.  Furthermore, the government must prove that this consent was given without implied or express duress or coercion."  *Id.* (quotations omitted).

The district court applied this two-part test and determined Gamez-Acuna's consent was both free and unequivocal and without coercion.  On appeal, Gamez-Acuna limits his challenge to the district court's determination his consent was unequivocal, specific and freely given, asserting he does not understand enough English to give a valid consent.  The district court's determination that Gamez-Acuna freely and voluntarily consented to the Trooper's search of the Nissan is a finding of fact which this court reviews for clear error.  *United States v. Rosborough*, 366 F.3d 1145, 1149 (10th Cir. 2004).  "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. Weed*, 389 F.3d 1060, 1071 (10th Cir. 2004) (quotation omitted).  This court's "role on clear error review is not to re-weigh the evidence; rather, our review of the district court's finding is significantly deferential."  *Id.* at 1071-72 (quotations omitted).

The district court's finding that Gamez-Acuna understood enough English to provide valid consent is fully supported by the record. Gamez-Acuna's ability to provide a wide range of information to the Trooper and follow the Trooper's directions supports the district court's conclusion Gamez-Acuna understood the Trooper's request for consent to search the Nissan. Gamez-Acuna was able to understand and respond appropriately to most of the Trooper's questions during the traffic stop. He accurately followed the Trooper's directions to provide the vehicle documents and a driver's license, exit the Nissan, and enter the Trooper's patrol car. Gamez-Acuna likewise left the patrol car without question when the Trooper said he was free to leave. He was able to communicate with the Trooper about numerous topics, including the reason for the stop, whether the Trooper was giving him a ticket, details about the Nissan, as well as his name, date of birth, travel plans, employment, family situation, and biographical information. When Gamez-Acuna did not understand, he said so and the Trooper followed up with additional questions until Gamez-Acuna registered his understanding. This evidence fully supports the district court's finding that Gamez-Acuna understood sufficient English to freely and unequivocally consent to the search of the Nissan.[8] *See, e.g.*, *Zubia-Melendez*, 263 F.3d at 1162-63 (holding consent valid

---

[8]Gamez-Acuna asserts this court should reverse because the district court disregarded his linguistics witness in denying the motion to suppress. "Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within

(continued...)

despite the defendant's difficulty speaking and understanding English); *United States v. Corral*, 899 F.2d 991, 994-95 (10th Cir. 1990) (same).  Thus, the district court did not err in denying Gamez-Acuna's motion to suppress.

**B.  Sufficiency of the Evidence**

This court reviews de novo challenges to the sufficiency of the evidence to support a conviction.  *United States v. Jameson*, 478 F.3d 1204, 1208 (10th Cir. 2007).  "We ask whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  *Id.* (quotation omitted).  In undertaking that analysis, this court "will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury."  *United States v. Summers*, 414 F.3d 1287, 1293 (10th Cir. 2005).

Gamez-Acuna asserts the government failed to adduce sufficient evidence at trial that he knowingly possessed the methamphetamine with intent to distribute.  He appears to recognize the government provided ample evidence at

---

[8](...continued)
the province of the district court."  *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998).  It was certainly not clearly erroneous for the district court to rely on evidence other than that presented by Gamez-Acuna in resolving whether Gamez-Acuna had a sufficient grasp of English to give a valid consent to search.

trial from which a jury could conclude he had a guilty state of mind.[9]  He argues, however, that the vast bulk of this evidence is equally attributable to his status as an illegal alien and that the government is under some kind of heightened burden to demonstrate the jury relied on that evidence for the purpose of convicting him of the drug charge.[10]  The problem with this argument is that it has already been made to, and rejected by, the jury.  At trial, Gamez-Acuna admitted he was in the United State illegally and testified to the jury that his status as an illegal explained his nervousness and evasiveness.  The jury chose to disbelieve Gamez-Acuna's testimony, and concluded instead that the extreme nervousness, evasiveness, and false documentation was attributable to the presence of drugs in the Nissan, not to his status as an illegal alien.  This court cannot re-weigh the conflicting evidence or second-guess the jury's determination.  The evidence here was more than sufficient for a reasonable jury to conclude Gamez-Acuna

---

[9]The government adduced the following evidence at trial relevant to the question whether Gamez-Acuna knowingly possessed the methamphetamine with intent to distribute it: he was extremely nervous, and that extreme nervousness persisted throughout the entire encounter; his implausible travel plans; his lack of surprise when the Trooper discovered the methamphetamine in the spare tire; his use of a driver's license and vehicle documents in another name; the short one-month term of the vehicle insurance; the presence of two cell phones in the vehicle; and the large value of the methamphetamine, making it unlikely anyone would abandon it.

[10]According to Gamez-Acuna, "Absent proof that the jury relied on such circumstances as evidence of the 'knowingly or intentionally' mental state of the drug charge, the attendant circumstances did nothing more than buttress the illegal reentry of a deported alien charge."  Appellant's Opening Brief at 21.

knowingly possessed the methamphetamine secreted in his spare tire with the intent to distribute.

## C. Denial of Severance

Before the district court, Gamez-Acuna asserted the drug possession and illegal reentry charges were misjoined because they were not "of the same or similar character," "based on the same act or transaction," or "parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Alternatively, he requested that the district court exercise its discretion to sever the charges, even if properly joined, to avoid the possibility the jury would hold his immigration status against him in resolving the drug charge. Fed. R. Crim. P. 14(a) (granting district court discretion to sever charges if necessary to avoid prejudice to the parties). The district court denied the motion to sever. On appeal, Gamez-Acuna does not contest the district court's determination that the charges were properly joined pursuant to Rule 8. Instead, he asserts the district court abused its discretion when it refused to sever the charges pursuant to Rule 14(a).

"We have long recognized that the decision to grant severance under Rule 14 rests within the discretion of the district court and the burden on [the] defendant to show an abuse of discretion in this context is a difficult one." *United States v. Olsen*, 519 F.3d 1096, 1102 (10th Cir. 2008) (quotation omitted). To demonstrate the district court abused its broad discretion the defendant must make a "strong showing of prejudice." *United States v. Jones*, 213 F.3d 1253,

-15-

1260 (10th Cir. 2000) (quotation omitted). To establish "real prejudice, the defendant must demonstrate . . . the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials. *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994) (quotation omitted). Mere allegations a defendant "would have a better chance of acquittal in a separate trial is not sufficient to warrant severance." *United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004) (quotation omitted).

Gamez-Acuna has not satisfied his heavy burden of showing real prejudice flowing from the district court's refusal to sever his illegal-reentry and drug-possession charges. On appeal, Gamez-Acuna argues that although the two charges contain different elements, the same evidence is relevant to both charges. In particular, he argues that evidence of his extreme nervousness is potentially attributable both to his status as an illegal alien and to his knowing possession of illegal drugs. According to Gamez-Acuna, the "inability to distinguish between how the jury perceived the evidence," Appellant's Brief at 22, satisfies his burden of demonstrating real and substantial prejudice.

Gamez-Acuna's argument is without merit. Gamez-Acuna's strategy at trial was clear. In an effort to negate the prosecution's argument that his extreme nervousness demonstrated his knowledge of the methamphetamine in his spare tire, Gamez-Acuna testified and argued that his nervousness flowed exclusively from his fear that officials would discover he was in the United States illegally.

-16-

The jury disbelieved Gamez-Acuna's testimony and convicted him on the drug-possession charge. We see nothing about the course of these proceedings that prejudiced, in any way, Gamez-Acuna's right to a fair trial. Indeed, as noted by the government, even if the charges had been severed, there is absolutely nothing in the record to indicate Gamez-Acuna would have altered his trial strategy in any way. That is, Gamez-Acuna would have defended the knowledge element of the drug charges in exactly the same way whether or not the charges were severed. Accordingly, he has completely failed to establish the alleged prejudice he suffered, assuming there was any, "outweighed the expense and inconvenience of separate trials." *Martin*, 18 F.3d at 1518. Thus, the district court did not abuse its broad discretion when it denied Gamez-Acuna's Rule 14 motion to sever the illegal-reentry and drug-possession charges.

## D. Ineffective Assistance of Trial Counsel

On appeal, Gamez-Acuna asserts his trial counsel provided constitutionally ineffective assistance when he failed to call a linguistics expert to testify at trial. As the government correctly notes, however, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *Galloway*, 56 F.3d at 1240. This court has noted that the reasoning behind the *Galloway* rule is "self-evident":

A factual record must be developed in and addressed by the district court in the first instance for effective review. Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim.

An opinion by the district court is a valuable aid to appellate review for many reasons, not the least of which is that in most cases the district court is familiar with the proceedings and has observed counsel's performance, in context, firsthand. Thus, even if the record appears to need no further development, the claim should still be presented first to the district court in collateral proceedings (which can be instituted without delay) so the reviewing court can have the benefit of the district court's views.

*Id.* (footnote omitted). Accordingly, pursuant to the dictates of *Galloway*, we dismiss Gamez-Acuna's ineffective assistance claim without prejudice to the bringing of such a claim in a timely 28 U.S.C. § 2255 motion.

## III. CONCLUSION

Gamez-Acuna's ineffective assistance of trial counsel claim is **DISMISSED WITHOUT PREJUDICE**. The remaining claims on appeal are all without merit. Accordingly, Gamez-Acuna's convictions are hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge